UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CALIFORNIA ASSOCIATION OF
RURAL HEALTH CLINICS and
AVENAL COMMUNITY HEALTH
CENTER,

                          NO. CIV. S-10-759 FCD/EFB

        Plaintiffs,

    v.                    <u>MEMORANDUM AND ORDER</u>

DAVID MAXWELL-JOLLY, Director
of California Department of
Health Services; TOBY DOUGLAS,
Chief Deputy Director for
Health Care Programs of the
California Department of
Health Care Services; and the
CALIFORNIA DEPARTMENT OF
HEALTH CARE SERVICES,

        Defendants.

----oo0oo----

    This matter is before the court on plaintiffs California
Association of Rural Health Clinics ("CARHC") and Avenal
Community Health Center ("ACHC") (collectively, "plaintiffs")
motion for summary judgment.  The parties agree this case
presents purely legal questions involving the federal Medicaid
law definitions of mandatory Rural Health Clinic ("RHC") and

1

Federally-Qualified Health Center ("FQHC") services benefits, and thus, resolution of the case via plaintiffs' motion for summary judgment is appropriate.[1]

Plaintiffs contend Congress defined both Medicare and Medicaid RHC and FQHC services benefits to include the Medicare core services[2] identified in 42 U.S.C. § 1395x(aa)(1), which plaintiffs assert requires both programs to reimburse RHCs and FQHCs for the services of medical doctors, dentists, and subject to certain limitations, the services of optometrists, podiatrists and chiropractors.  California's Medicaid program, Medi-Cal, formerly reimbursed RHCs and FQHCs for adult dental, chiropractic, optometric and podiatric services.  However, on February 19, 2009, the California legislature adopted California Welfare & Institutions Code § 14131.10 ("§ 14131.10") which ended coverage of certain Medicaid benefits to the extent they are "optional" under federal law, including, among others not relevant here, adult dental, podiatry, optometry, and chiropractic services, beginning July 1, 2009.

---

[1]   Defendants filed various objections to plaintiffs' evidence submitted on the motion (Docket #19).  However, the parties agree the issues presented by plaintiffs' motion are wholly legal issues.  Plaintiffs' proffered evidence provides simply context to the issues and any disputed facts created by the evidence are not material to resolution of the motion.  Therefore, the court overrules defendants' objections directed at the various declarations submitted by plaintiffs in support of the motion.

[2]   The term "core" services is not used in the statutory scheme at issue here; however, the parties use the term in their papers to reference those services they contend are mandatory services for which RHCs and FQHCs are required to be reimbursed under Medicaid Act.  Accordingly, the court likewise uses the term in the same respect herein.

1    Since that date, defendant California Department of Health
2    Care Services ("DHCS"), the state agency that administers the
3    Medi-Cal program, has discontinued reimbursement to RHCs and
4    FQHCs for most of these services provided to Med-Cal
5    beneficiaries.   In opposing the motion, defendants describe that
6    they recently reinstated reimbursement for optometry services
7    provided by RHC/FQHCs, having determined that the Medicaid Act
8    requires payment for optometry services, even if not included in
9    the State Medicaid Plan ("State Plan"), *if* the State Plan had
10   previously provided these services (42 U.S.C. § 1396d(e)).
11   Defendants indicate reimbursement will be retroactive to July 1,
12   2009.   Thus, at issue on the motion is only § 14131.10's
13   exclusion of coverage of adult dental, podiatry and chiropractic
14   services.

15       By this action, plaintiffs, an association of RHCs
16   (plaintiff CARHC) an a FQHC (plaintiff ACHC), seek declaratory
17   and injunctive relief to stop the continued implementation of
18   § 14131.10 in a manner that they allege conflicts with the
19   federal statutory mandates to reimburse RHCs and FQHCs for
20   providing the subject adult dental, podiatry and chiropractic
21   services.   Plaintiffs contend that under the Supremacy Clause,
22   applicable federal law preempts any State law excluding these
23   mandatory services benefits from coverage.   Additionally,
24   plaintiffs contend that defendants have violated federal law
25   because DHCS has not received federal approval of its proposed
26   changes to the State Plan reflected in § 14131.10, discontinuing
27   reimbursement of RHCs and FQHCs for these core services.

28

1    Defendants oppose the motion, arguing preliminarily that
2  plaintiffs' motion should be denied because a private right of
3  action does not exist to bring either of plaintiffs' claims.
4  Alternatively, defendants request a stay of the action.  Should
5  the court reach the merits of the action, defendants argue the
6  at-issue services are optional benefits which are not statutorily
7  mandatory services for which RHCs and FQHCs are required to be
8  reimbursed.  Accordingly, the state law's exclusion of coverage
9  for these services is permissible, and thus, there is no conflict
10  with federal law.  Defendants further contend that federal law
11  does not require that they receive prior federal approval before
12  implementation of any changes to the State Plan.

13    The court heard oral argument on the motion on October 8,
14  2010.  By this order, it now renders its decision, GRANTING in
15  part and DENYING in part plaintiffs' motion.  The court finds
16  that plaintiffs have a right under federal law to bring both of
17  their claims, and there is no basis to stay the action.  As for
18  the merits, the courts finds that plaintiffs have not
19  demonstrated § 14131.10 conflicts with federal law as the subject
20  benefits are not mandatory services under federal Medicaid law
21  required to be reimbursed to RHCs and FQHCs.  However, federal
22  law does require prior federal approval of changes to the State
23  Plan at issue here, and thus, plaintiffs are entitled to a
24  declaration finding as such as well as an injunction precluding
25  further enforcement of § 14131.10 with respect to the subject
26  benefits until the State's plan amendment is approved.

27
28

BACKGROUND[3]

1.   General Factual Background

Plaintiff CARHC is a California non-profit corporation, whose mission is to provide education and advocacy regarding the role of California's RHCs in the rural health care delivery system in order to further the interests of RHCs and their patients.  (Defs.' Resp. to Pls.' Stmt. of Undisp. Facts ["RUF"], filed Sept. 22, 2010, ¶ 6.)  CARHC currently includes in its membership 65 health care providers each of which is certified by the United States Department of Health & Human Services' Center for Medicare and Medicaid Services ("CMS") as a RHC, as defined for purposes of the Medicaid Program in 42 U.S.C. § 1396d($l$)(1).  (RUF ¶ 7.)  RHCs operate in designated medically underserved rural areas.  Many CARHC's members are enrolled in the Medi-Cal program as providers and have provided dental and podiatry services to Medi-Cal beneficiaries.  (RUF ¶ 8.)  CARHC brings this suit on its own behalf and in its representative capacity on behalf of its members who have been directly and adversely affected by the discontinuation of Med-Cal reimbursement for dental, podiatry, optometry or chiropractic services.  (RUF ¶s 9-10.)

Plaintiff ACHC is a California non-profit corporation with its principal place of business in Avenal, California, a

---

[3]   In some limited respects, defendants dispute the facts as proffered by plaintiffs in their statement of undisputed facts.  However, to the extent there is a dispute of fact, the court does not find it material to the legal issues presented by the motion, and thus, it treats the relevant fact as undisputed. Unless otherwise noted, the court finds the facts as described below undisputed.

designated medically underserved area.  (RUF ¶ 12.)  Avenal is
also a designated dental professional shortage area.[4]  (RUF ¶
13.)  ACHC is an approved FQHC as defined by the Medicaid Program
in 42 U.S.C. § 1396(*l*)(2), and provides health care services to
Medi-Cal recipients, among others.  (RUF ¶s 16-17, 18.)  As an
FQHC, ACHC is required to provide care to all patients without
regard to their ability to pay for such services.  (RUF ¶ 19.)
ACHC, as well as other FQHCs, are also required to maintain
sliding fee scale policies that provide for, among other things,
a 100% discount to patients whose incomes are below 100% of the
Federal Poverty Guidelines, permitting only a nominal charge.
(RUF ¶ 20.)

Both RHCs and FQHCs can seek federal reimbursement for
certain health services provided to Med-Cal beneficiaries; not
all services, however, provided by these types of clinics are
reimbursable.  (See RUF ¶s 18, 23, 28, 45, 46.)

In February 2009, in response to California's fiscal
emergency, the California legislature enacted budget measures to
reduce certain state programs, including through § 14131.10, the
elimination of coverage for certain Medicaid benefits it deemed
"optional" under federal law.  In pertinent part, § 14131.10
provides:

(a) Notwithstanding any other provision of this chapter,
. . . in order to implement changes in the level of

---

[4]     Such a designation identifies areas as having a
shortage of dental providers on the basis of availability of
dentists and dental auxiliaries.  In order to receive the
designation, an area must have a dentist-to-population ratio
below a set minimum and demonstrate a lack of access to dental
care in surrounding areas because of distance, overutilization or
access barriers.  (RUF ¶s 14-15.)

6

funding for health care services, specific optional benefits are excluded from coverage under the Medi-Cal program.

(b)(1) The following optional benefits are excluded from coverage under the Medi-Cal program:

(A) Adult dental services, except as specified in paragraph (2).

. . .

(D) Chiropractic services.
(E) Optometric and optician services, including services provided by a fabricating optical laboratory.
(F) Podiatric services.[5]

· · ·

(2) Medical and surgical services provided by a doctor of dental medicine or dental surgery, which if provided by a physician, would be considered covered physician services, and which services may be provided by either a physician or a dentist in this state, are covered.

. . .

(d) This section shall only be implemented to the extent permitted by federal law.

The law became effective July 1, 2009. Prior to that time, RHCs and FQHCs were reimbursed for these services. (RUF ¶s 24-27.) Plaintiffs maintain that as a result of defendants' implementation of § 14131.10 since July 1, 2009, RHCs and FQHCs have not received Medi-Cal reimbursement from DHCS for most adult dental, podiatry, chiropractic and optometry services, other than Federally-required adult dental services ("FRADS"), specified in § 14131.10(b)(2).

---

[5]     The statute also excludes from coverage under Medi-Cal the following services which are not at issue on the motion: acupuncture services; audiology and speech therapy services; pyschology services; and incontinence creams and washes.  Cal. Wel. & Inst. Code § 14131.10(b)(1)(B), ©, (G) and (H).

1    Specifically during this time, plaintiffs have received
2    significantly reduced Medi-Cal reimbursement for the services
3    eliminated by the statute.  (RUF ¶s 46-52.)  In that regard,
4    plaintiffs proffer evidence that:  Adventist Health RHCs have
5    received payments for dental and podiatry services for the period
6    July 1 to Dec. 31, 2009 that are 25 to 30% less than the payments
7    for dental and podiatry services for the first half of 2009.
8    (RUF ¶s 9-11, 48.)  Likewise, Medi-Cal payments for plaintiff
9    ACHC for dental, podiatry and optometry services for the period
10   July 1, 2009 to March 31, 2010, were approximately $19,000 per
11   month less than the payments for these services during the
12   preceding six months.  (RUF ¶ 53.)  Plaintiffs maintain that this
13   decrease in payment has occurred during a period when they have
14   seen an increase in demand from patients who are uninsured, and
15   maintain that over time, RHCs and FQHCs will be forced to
16   discontinue providing these services to their patients.  (RUF ¶s
17   49, 54-55, 57.)

18        **2.   <u>Essential Statutory Background</u>**

19             **a.   Federal Medicaid Law**

20        Title XIX of the Social Security Act (the "Medicaid Act")
21   establishes a cooperative federal-state program that provides
22   federal funding to states that choose to participate for medical
23   assistance to low-income persons. 42 U.S.C. § 1396.  Medicaid is
24   jointly financed by federal and state governments and
25   administered by the states through a Medicaid State Plan approved
26   by the Secretary for Health and Human Services ("HHS").  <u>Id.</u> at
27   § 1396a.  In exchange for federal matching funds, participating
28   states agree to comply with federal Medicaid laws and

regulations.   42 U.S.C. § 1396c; <u>see also</u> 42 C.F.R. § 430.35.
CMS administers the Medicaid program on the Secretary of HHS'
behalf, including approving State Plans.   A State Plan specifies
the services that the State has determined that it will provide.
42 U.S.C. § 1396d(a).   Each State Plan must include seven
specific types of medical services.   <u>Id.</u> at §§ 1396a(a)(10),
1396d(a)(1)-(5), (17), (21).   One of these seven services is
RHC/FQHC services, the scope of which is at issue in this case.
<u>Id.</u> at § 1396d(a)(2)(B) & ©.   California's Medicaid Program is
known as the California Medical Assistance Program, or
"Medi-Cal."   As the single state agency responsible for the
Medi-Cal program, DHCS supervises and administers the State Plan.
It also submits any amendments to the State Plan to CMS for
review and approval.   42 C.F.R. §§ 430.12, 430.14, 430.15.

Additionally, DHCS is responsible for ensuring that the
Medi-Cal program provides covered services to eligible
beneficiaries and for reimbursing providers for providing those
covered services in compliance with the State Plan and with
federal and state laws and regulations.   <u>Id.</u> at §§ 431.1, 431.10.
To be a covered service, the service must be included in the
State Plan and provided by an approved Medi-Cal provider to a
Medi-Cal beneficiary.   <u>See generally</u> 42 C.F.R. § 430.10.

**b.   RHC and FQHC Provisions under the Medicaid Act**

As stated above, Medicaid requires that participating
states, like California, include coverage for certain specified
services in their State Plan.   42 U.S.C. § 1396a(a)(10)
(referring to 42 U.S.C. § 1396d(a)(1)-(5), (17), (21) and (28)).
Section 1396a(a)(10) provides:

9

A State plan for medical assistance must – . . . (10)
provide–(A) for making medical assistance available,
including at least the care and services listed in
paragraphs (1) through (5), (17), (21) and (28) of section
1396d(a) of this title . . .

Section 1396d(a)(2) specifically addresses "rural health clinic

services" and "Federally-qualified health center services."[6]

A state may also "opt" to include in the State Plan any of the

other services listed in 42 U.S.C. § 1396d(a), such as dental

services.  <u>See id.</u> at § 1396d(a)(10).

Required Medicaid services thus include payment of RHC/FQHC

services.  <u>Id.</u> at § 1396d(a)(2)(B) & ©. Pursuant to said Section,

a state must provide "medical assistance" to RHC/FQHCs, which:

"means payment of part or all of the cost of the following care

and services . . .[:]"

(B) consistent with State law permitting such services,
rural health clinic services (as defined in subsection
(l)(1) of this section) and any other ambulatory services
which are offered by a rural health clinic (as defined in
subsection (l)(1) of this section) and which are otherwise
included in the plan, and © Federally-qualified health
center services (as defined in subsection (l)(2) of this
section) and any other ambulatory services offered by a

---

[6]     Section 1396d(a)(1) addresses "inpatient hospital
services (other than services in an institution for mental
diseases);" Section 1396d(a)(3) addresses "other laboratory and
X-ray services;" Section 1396d(a)(4) addresses "nursing facility
services;" Section 1396d(a)(5) addresses "(A) physicians'
services furnished by a physician (as defined in section
1395x(r)(1) of this title), whether furnished in the office, the
patient's home, a hospital, or a nursing facility, or elsewhere,
and (B) medical and surgical services furnished by a dentist
(described in section 1395x(r)(2) of this title) to the extent
such services may be performed under State law either by a doctor
of medicine or by a doctor of dental surgery or dental medicine
and would be described in clause (A) if furnished by a physician
(as defined in section 1395x(r)(1) of this title);" Section
1396d(a)(17) addresses "services furnished by a nurse-midwife;"
Section 1396d(a)(21) addresses "services furnished by a certified
pediatric nurse practitioner;" and Section 1396d(a)(28) addresses
"free standing birth center services."

Federally-qualified health center and which are otherwise
included in the plan.

This provision defines "rural health clinic services" in
reference to subsection *(l)*(1) of § 1396d and also gives a State
the option to reimburse an RHC for providing other non-specified
ambulatory State Plan services.   Subsection *(l)*(1) of § 1396d
defines the terms "rural health clinic services" and "rural
health clinic" as having the "meanings given such terms in
section 1395x(aa) of this title, . . . . "   Similarly,
§ 1396d(a)(2)© defines "Federally-qualified health center
services" in reference to subsection *(l)*(2) of  § 1396d and also
gives a State the option to reimburse an FQHC for providing other
non-specified ambulatory State Plan services.   Subsection *(l)*(2)
of § 1396d defines the term "Federally-qualified health center
services" to mean "services of the type described in
subparagraphs (A) through © of section 1395x(aa)(1) of this title
when furnished to an individual as a patient of a
Federally-qualified health center . . . ."

Title 42 U.S.C. § 1395x(aa) defines both "rural health
clinic services" and "Federally-qualified health center services"
to include: "physicians' services" (§ 1395x(aa)(1)(A));
"physician assistant or a nurse practitioner" services
(§ 1395x(aa)(1)(B)); "clinical psychologist" services
(§ 1395x(aa)(1)(B)); "clinical social worker" services
(§ 1395x(aa)(1)(B)); and in the case of a RHC, in an area in
which there exists a shortage of home health agencies, part-time
or intermittent nursing care and related medical supplies
furnished by a registered professional nurse or licensed

1   practical nurse to a homebound individual under a written plan of

2   treatment (§ 1395x(aa)(1)©).

3       To this point, the parties agree on the above description of

4   the applicable law.  They also agree that "physicians' services"

5   as referenced in § 1395x(aa)(1) are considered the "core"

6   services for which RHC/FQHCs are entitled to be reimbursed under

7   Medicaid.  Where the parties diverge is in the next step:

8   defining "physicians' services."

9       Plaintiffs argue because § 1396d defines RHC and FQHC

10  services in reference to a *Medicare* provision--§ 1395x(aa)--the

11  court should similarly look to Medicare's definition of

12  "physician" which is contained in § 1395x® and includes: (1) "a

13  doctor of medicine or osteopathy" (§ 1395x(r)(1)); (2) "a doctor

14  of dental surgery or of dental medicine" (§ 1395x(r)(2)); (3) "a

15  doctor of podiatric medicine" (§ 1395x(r)(3)); (4) "a doctor of

16  optometry" (§ 1395x(r)(4)); and (5) "a chiropractor" (§

17  1395x(r)(5)).  Plaintiff thus argues that all of these

18  physicians' services must be reimbursed when provided by a RHC or

19  FQHC.  They assert that since Jan. 1, 2001, California's State

20  Plan defined RHC/FQHC services to includes these six

21  professionals, and § 14131.10 improperly denies reimbursement for

22  these mandatory services.

23      Defendants contend to the contrary that there is no legal

24  basis to turn to *Medicare* laws to define *Medicaid* requirements.

25  Medicaid specifically defines "physicians' services" in

26  § 1396d(a)(5)(A) as "services furnished by a physician (as

27  defined in section 1395x(r)(1) of this title."  Thus, it

28  incorporates only part of Medicare's definition of "physician"--

namely, subsection 1395x(r)(1), defining "physician" as "a doctor of medicine or osteopathy legally authorized to practice medicine and surgery by the State in which he performs such functions or action." Thus, defendants argue that certain services of dentists, optomotrists, podiatrists, and chiropractors are not mandatory services required to be reimbursed to RHCs and FQHCs.

Defendants emphasize that Medi-Cal continues to reimburse RHC/FQHCs for other mandatory services, including certain dental services, psychology and optometry services. 42 U.S.C. § 1396d(a)(5) and § 1396a(a)(10)(A). For example, defendants acknowledge that certain adult dental services are federally-required (the aforementioned "FRADS"); these include: "medical and surgical services furnished by a dentist (described in section 1395x(r)(2) of this title) to the extent such services may be performed under State law either by a doctor of medicine or by a doctor of dental surgery or dental medicine and would be described in clause (A) if furnished by a physician (as defined in section 1395x(r)(1) of this title)." 42 U.S.C. § 1396d(a)(5)(B). Section 14131.10(b)(2) specifically requires coverage for these services.[7]

_____

[7]   As discussed more fully below, plaintiffs vigorously dispute this interpretation of Medicaid's requirements for payment of dental services. They maintain that federal law requires State Medicaid agencies to cover dental services more broadly when provided by a RHC/FQHC. Plaintiffs contend that the scope of coverage is determined by reference to the licensure category of the individual healthcare professional, rather than to a limited set of services covered when delivered by such a professional, citing § 1395x(aa)(1)(A)-©. As support for its interpretation, plaintiffs cite a 2003 email of Bernadette Quevedo-Mendoza, of the Office of the Regional Administrator for CMS Region VII ) ("Quevedo-Mendoza email"), who advised the State of North Dakota that "dental services provided by the FQHC or RHC [must] be reimbursed even if the state drops optional dental

Defendants also acknowledge that Medicaid expressly includes within the scope of covered mandatory RHC/FQHC services, "services furnished . . . by a clinical psychologist or by a clinical social worker . . . as would otherwise be covered if furnished by a physician." Id. at § 1395x(aa)(1)(B).  As such, defendants point out that contrary to § 14131.10's exclusion of psychology services as an "optional benefit," DHCS has continued to reimburse RHC/FQHCs for these services, as the statute expressly provides that it "shall only be implemented to the extent permitted by federal law."  Cal. Wel. & Inst. Code § 14131.10(d).

Finally, originally following the enactment of § 14131.10, DHCS did not reimburse for optometric services.  However, DHCS recently reinstated reimbursement for these services and the reimbursement will be retroactive to July 1, 2009.  Defendants concede the Medicaid Act requires payment for optometry services, even if not included in the State Plan, if the State Plan had previously provided these services.  42 U.S.C. § 1396d(e).  Such is the case in California, and thus, defendants now agree that despite § 14131.10's exclusion of coverage, DHCS must reimburse RHCs and FQHCs for the provision of optometric services to Medi-Cal beneficiaries.

### 3.   Approval of State Plan Amendments

The State Plan is a comprehensive written statement submitted by DHCS, describing the nature and scope of its

---

services."  (RUF ¶ 39.) Plaintiffs assert under Skidmore v. Swift and Co., 323 U.S. 134, 140 (1944) such a federal agency's construction of a statute is entitled to "respect."

14

Medicaid program and assuring it will be administered in conformity with the requirements of Medicaid law.  42 C.F.R. § 430.10 & 447.252(b).  A State Plan must be approved by CMS before the State can receive federal funds for its Medicaid program.  42 U.S.C. § 1396, 1396b(a).  When a State seeks to make changes to its approved State Plan, it must submit a State Plan Amendment ("SPA") to CMS so CMS may determine whether the amended State Plan continues to comply with federal requirements.  42 C.F.R. § 430.12.  CMS may approve or disapprove of the SPA or it may request more information before making a determination.  Id. at § 430.16.  If CMS fails to act upon a submitted SPA within 90 days, the amendment is deemed approved.  Id.  A request for more information stops the 90-day clock.  Id. at §§ 430.16(a)(2); 447.256(b).

Here, DHCS submitted a SPA on June 30, 2009 which proposed to substantially exclude coverage of the subject eight Medicaid benefits provided by RHCs and FQHCs as stated in § 14131.10. (RUF ¶s 32-34.)  On October 22, 2009, CMS advised DHCS that the proposed SPA was not approvable as drafted and requested additional information.  (RUF ¶ 35.)  To date, no SPA has yet been approved excluding coverage of any of the Medicaid benefits listed in § 14131.10.  (RUF ¶ 36.)

**STANDARD**

Under Federal Rule of Civil Procedure 56, a court shall grant a motion for summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©.  Here, the parties agree that the material facts in this action are not in

15

dispute.  Thus, it is appropriate for the court to resolve the purely legal questions presented by the action at the summary judgment stage.

**ANALYSIS**

### 1.  Federal Preemption

Preliminarily, defendants argue plaintiffs' first claim fails because there does not exist a private right of action to challenge § 14131.10 on the basis of federal preemption.[8] Plaintiffs contend to the contrary that they have a private right to pursue an action against defendants under 42 U.S.C. § 1983, asserting a violation of the Supremacy Clause, on the basis of 42 U.S.C. § 1396a(bb) which mandates state payments for services furnished by RHCs and FQHCs.  Section 1396a(bb) provides:  A "State plan *shall provide for payment* for services . . . furnished by a Federally-qualified health center and services . . . furnished by a rural health clinic in accordance with the provisions of this subsection."  (Emphasis added); See also § 1396a(bb)(2)-(4) repeating the same.  Subsections 1396a(bb)(5)(A) and 1396a(bb)(6)(B) further provide the procedure and methodology for payment of the services: "The State plan *shall provide for payment* to the center or clinic of supplemental payments, no less frequently than every 4 months, in the event that payments by Medicaid managed care plans are less than the minimum

---

[8]    Defendants challenge the viability of plaintiffs' § 1983 claims, raising federal preemption and failure to receive federal approval of a SPA, solely on the ground of a lack of a private right of action; they do not oppose plaintiffs' motion on the issues that (1) plaintiffs are "persons" entitled to relief under § 1983 and (2) the individual defendants acted under color of state law as required by § 1983.

reimbursement rate determined under 1396a(bb)."  42 U.S.C.
§ 1396a(bb)(5)(A) (emphasis added).  Providing for an alternative
payment methodology, § 1396a(bb)(6)(B) provides that such
methodology must "*result[] in payment* to the center or clinic of
an amount which is at least equal to the amount otherwise
required to be paid to the center or clinic under this section."
Id. at § 1396(bb)(6)(B) (emphasis added).

In Blessing v. Freestone, 520 U.S. 329, 340 (1997), the
Supreme Court established a three prong test for determining
whether a particular federal statute can be enforced through a
private right of action under Section 1983.  The Blessing test
requires that: (1) Congress intended the statutory provision to
benefit the plaintiff; (2) the asserted right is not so "vague
and amorphous" that its enforcement would strain judicial
competence; and (3) the provision couch the asserted right in
mandatory rather than precatory terms.  Id.  In Gonzaga
University v. Doe, 536 U.S. 273, 284 (2002), the Court emphasized
that in finding a private right of action, "a court must be
careful to ensure that the statute at issue contains
'rights-creating language' and that the language is phrased in
terms of the persons benefitted, not in terms of a general
'policy or practice.'"

Plaintiffs concede the Ninth Circuit has yet to address the
issue; however, they rely on several other circuits' decisions
which have found that § 1396a(bb) gives rise to a right
enforceable under Section 1983 because the statute evidences
Congress' intent to benefit RHC/FQHCs, and it requires action on
the part of the states, *i.e.*, that the states reimburse RHC/FQHCs

17

for services provided to Medicaid patients.  For example, in <u>Pee Dee Health v. Sanford</u>, 509 F.3d 204 (4th Cir. 2007), the Fourth Circuit held that § 1396a(bb) contained the type of "rights-creating" language required by <u>Gonzaga</u>, thus establishing a private right of action.  There, plaintiff Pee Dee was a RHC serving Medicaid recipients and it brought a claim alleging that the reimbursement formula used by the South Carolina Medicaid agency violated Pee Dee's statutorily conferred right to proper reimbursement under § 1396a(bb).  In this case of first impression, where the court considered whether § 1396a(bb) "read as whole" provided a private right of action,[9] the Fourth Circuit held that Congress intended in § 1396a(bb) to benefit RHCs as they are specifically described by the statute which designates them as the recipient of payment, the rights conferred by the statute were not vague, and mandatory action was required by the states (they are directed to "provide for payment of services . . . furnished by" RHCs).  Thus, all of the <u>Blessing</u> factors were met, permitting Pee Dee's action under § 1396a(bb).  <u>Id.</u> at 211.

Similarly, in <u>Rio Grande Community Health Center, Inc. v. Rullan</u>, 397 F.3d 56, 74 (1st Cir. 2005), the First Circuit concluded that FQHCs could bring an action under § 1983 to enforce § 1396a(bb)(5)(A)'s requirements for the calculation of and time frame for supplemental payments.  The court found the statutory language that a "State plan 'shall provide for payment to [FQHCs] . . . by the State of a supplemental payment'" to be

---

[9]    In previous cases, courts had considered whether certain subsections of § 1396a(bb) provided a private right of action.  <u>See e.g.</u> <u>Rio Grande</u> below.

1  rights-creating language which was mandatory and had a clear

2  focus to benefit FQHCs, rather than the regulated states.  Id.;

3  accord Concilio de Salud Integral de Loisa, Inc. v.

4  Perez-Perdomo, 551 F.3d 10, 17-18 (1st Cir. 2008) (finding FQHCs

5  had the right, under § 1983, to enforce § 1396a(bb)'s

6  reimbursement methodology to ensure that supplemental payments

7  were properly calculated and made); see also Chase Brexton Health

8  Services, Inc. v. Marlyand, 411 F.3d 457, 459-60 (4th Cir. 2005)

9  (FQHCs had the right to challenge state's method of calculating

10  reimbursement); Community Health Ctr. v. Wilson-Coker, 311 F.3d

11  132, 135-36 (2nd Cir. 2002) (FQHC could bring challenge to

12  State's reimbursement formula as violating federal law).

13      Defendants contend that these cases are distinguishable

14  because what is at issue here is the *scope* of covered services,

15  not § 1396a(bb)'s right of reimbursement.  Defendants assert

16  § 1396a(bb) only addresses the rights of these providers to

17  receive payment for services; it does not address the scope of

18  such services.  And, the applicable statutes establishing what is

19  a covered service (either § 1396x(r)(1)-(5) as asserted by

20  plaintiffs or § 1396x(r)(1) only as asserted by defendants) are

21  purely definitional and have no rights-creating language

22  establishing a private right of action to enforce the provisions.

23      Defendants' argument is both incorrect and circular.

24  First, § 1396a(bb)(1) specifically identifies the set of services

25  that must be reimbursed by State Medicaid agencies, like DHCS:

26      Beginning with fiscal year 2001 with respect to services
        furnished on or after January 1, 2001, and each succeeding
27      fiscal year, the State Plan shall provide for payment
        for services described in section 1396d(a)(2)© furnished by
28      a [FQHC] and services described in section 1396d(a)(2)(B)

1    furnished by a [RHC] in accordance with the provisions of
2    this subsection.

3    Thus, contrary to defendants' characterization, Section 1396a(bb)
4    *does* define the scope of services for which RHC/FQHCs are
5    entitled to reimbursement.  Accordingly, there is no factual
6    basis to distinguish the decisions of the First, Second and
7    Fourth Circuits finding a private right of action under
8    § 1396a(bb).

9        Moreover, defendants appear to be arguing that because
10   § 1396a(bb) incorporates defined terms it cannot give rise to a
11   private right of action.  However, they cite no case law in
12   support of this argument.  Indeed, defendants concede that the
13   First, Second and Fourth Circuits have recognized private rights
14   of action for RHC/FQHCs to enforce § 1396a(bb).  This right would
15   be meaningless if its exercise did not extend to ensuring a
16   provider's ability to receive payment for *particular* services
17   which federal law requires State programs to cover.

18       Finally, contrary to defendants' argument, plaintiffs here
19   are pressing their own rights to restore coverage for services
20   State Medicaid programs are required to cover, thereby insuring
21   they will receive payment for furnishing these mandatory
22   services.  Plaintiffs are not bringing suit on behalf of plan
23   beneficiaries, trying to effectuate beneficiaries' rights to
24   particular services, and thus, there is no standing impediment.

25       In sum, plaintiffs properly rely on § 1396a(bb) as the
26   source of the right they seek to enforce by this action; as
27   consistently recognized by several other circuits, said statute
28   affords a private right of action under the test as enunciated by

1  the Supreme Court in <u>Blessing</u> and <u>Gonzaga</u>.[10]

2      As to the merits, plaintiffs' Supremacy Clause claim is

3  predicated upon a theory of federal conflict preemption.   Under

4  general principles of federal preemption, state law is preempted

5  only to the extent that it actually conflicts with federal law.

6  Such a conflict may arise either where compliance with both

7  federal and state regulations is a physical impossibility, or

8  where state law stands as an obstacle to the accomplishment and

9  execution of the full purposes and objectives of Congress.

10  Conflict preemption, in which compliance with both federal and

11  state law is impossible, occurs when the State law would allow a

12  different result than the applicable federal law.   <u>See</u> <u>Cal.</u>

13  <u>Pharm. Ass'n v. Maxwell-Jolly</u>, 630 F. Supp. 2d 1154, 1158 (C.D.

14  Cal. 2009), citing <u>Pacific Gas & Elec. Co. v. State Energy</u>

15  <u>Comm'n</u>, 461 U.S. 190, 204 (1983).

16      As set forth above, plaintiffs claim that § 14131.10

17  improperly excludes coverage for core services benefits which

18  federal law requires States to pay for when furnished by a

19  RHC/FQHC.   Such services, plaintiffs contend, are mandatory since

20

21      [10]   Because the court finds that a private right of action
exists, it need not consider defendants' argument that the court
22  should nonetheless stay the action pending their pursuit of three
certiorari petitions before the Supreme Court.   Defendants
23  contend that before the Supreme Court is the issue of whether a
private party may bring a Supremacy Clause claim when it lacks a
24  private right of action under Section 1983.   Plaintiffs dispute
this description of the pending issue, claiming that the
25  certiorari petitions are wholly unrelated to this action as they
involve the issue of whether the State is required under the
26  Medicaid statutes to assess the impact on the quality of care and
access to care before rate changes are implemented.   The court
27  need not resolve this dispute as it finds a private right of
action does exist and therefore must reach the merits of this
28  action.

1  "physician" is defined to include, among others, dentists,
2  podiatrists, and chiropractors.  42 U.S.C. § 1395(r)(1) to (5).

3       Plaintiffs maintain this Medicare definition applies, as
4  opposed to the general definition of "physicians' services"
5  applicable to all Medicaid providers that are not RHC/FQHCs, (1)
6  as a matter of straight statutory construction and/or (2) because
7  Congress "clearly intended" the scope of reimbursable RHC/FQHC
8  services under Medicaid to be broader than for other Medicaid
9  providers.

10      Plaintiffs contend the applicable statutes mandate this
11 court apply the Medicare definition of "physician" to define the
12 mandatory services since the Medicaid Act incorporates a Medicare
13 definition of RHC and FQHC services.  According to plaintiffs,
14 the court must stay within the confines of Medicare to further
15 define the applicable services.

16      With respect to Congressional intent, plaintiffs cite
17 § 1396d(a)(2)(B) and © which require the State to pay RHC/FQHCs
18 for all services defined by subsection *(l)*(1) and (2) *and* any
19 other ambulatory services offered by the providers which are
20 otherwise included in the plan.  The statutes also require
21 payment to RHC/FQHCs for services provided by these providers'
22 physician assistants, nurse practitioners, clinical
23 psychologists, or clinical social workers.  § 1395x(aa)(1)(B).
24 This plaintiffs argue demonstrates that Congress wanted to ensure
25 access to a more comprehensive set of minimum benefits when
26 services were furnished by RHC/FQHCs who care for medically

27
28

underserved communities.[11]

Plaintiffs also assert the court should give deference to two statements of opinion by CMS which they allege support their interpretation of the statutes at issue.  First, plaintiffs' contend the court should defer to the Quevedo-Mendoza email wherein Quevedo-Mendoza told the State of North Dakota that even if it rendered dental services optional, reimbursement must continue with respect to RHC/FQHCs for these services.  (See n. 7 supra.)  Plaintiffs also cite a 2003 opinion letter of Dennis Smith, CMS' Director (the "Smith Letter"), wherein he stated that "the definition of FQHC services is the same for Medicaid as it is for the Medicare program."  (RUF ¶ 43.)

Defendants respond that plaintiffs' argument is premised on an erroneous interpretation that the federal *Medicare* definition of "physician" governs for purposes of RHC/FQHC services provided to a *Medicaid* recipient.  Defendants argue it is significant that Medicaid and Medicare define physician differently as set forth above:  Medicaid limits the term to doctors of medicine and osteopathy (§ 1396d(a)(5)(A) [limiting the definition of "physician" to the definition in § 1395x(r)(1) only) while

---

[11]     At oral argument, plaintiffs abandoned their Congressional intent argument raised in their reply, and instead argued that the statutes were clear, on their face, and thus, the court need look no further than the plain statutory language to find in their favor.  The court does not agree for the reasons set forth below.  However, as a result of plaintiffs' concession at oral argument, the court does not consider the issue of Congressional intent herein.  The court will note, nonetheless, that plaintiffs' argument regarding Congressional intent is more properly construed as an extension of their statutory construction argument, as they do not proffer any legislature history or other outside sources in support of their argument, but rather cite to other *statutory* provisions and argue that this court can glean Congressional intent from those provisions.

23

1   Medicare defines the term to include these doctors as well as

2   dentists, podiatrists, optometrists and chiropractors

3   (§ 1395x(r)(1)-(5)).  Defendants emphasize case law recognizing

4   that identical words in the same statutory scheme "need not have

5   the same meaning 'when the identical word is used in different

6   provisions that address disparate subjects." (Opp'n, filed Sept.

7   22, 21010, at 14-15.)  Here, defendants argue given the different

8   patient populations of Medicaid--low income persons--versus

9   Medicare--the elderly--it is logical that the programs may have

10  differing scopes and limitations.  Since the court is considering

11  application of Medicaid's requirements, defendants assert the

12  court should turn to Medicaid's definitions unless the statute

13  expressly requires otherwise.

14        The court agrees with defendants, as the starting point must

15  be the statutory language itself.  It has long been the rule that

16  "when the statutory language is plain, the sole function of the

17  courts . . . is to enforce it according to its terms." <u>Arlington</u>

18  <u>Cent. Scho. v. Murphy</u>, 548 U.S. 291, 296-97 (2006).  Here,

19  nothing in the applicable statutes directs this court to the

20  Medicare definition of "physician" contained in

21  § 1395x(r)(1)-(5).  Indeed, the precise term at issue is not

22  "physician" but "physicians' services."  42 U.S.C.

23  § 1395x(aa)(1)(A) (defining RHC and FQHC services to include

24  "physicians' services").  That specific term is defined by the

25  applicable Medicaid Act; § 1396d(a)(5)(A) defines "physicians'

26  services" as:  "services furnished by a physician (as defined in

27  section 1395x(r)(1) of this title)."  Thus, the specific

28  provision directly defining "physicians' services" limits the

definition to only those physicians described in § 1395x(r)(1);
namely, "a doctor of medicine or osteopathy legally authorized to
practice medicine and surgery by the State in which he performs
such functions or actions."   42 U.S.C. § 1395x(r)(1).

     Although not raised by defendants, the court is also not
compelled by plaintiffs' statutory construction argument
considering that numerous subsections of § 1395x(r)(2)-(5)
contain certain qualifications which only relate to the *Medicare*
statute.   For example, as opposed to § 1395x(r)(1) which contains
*no* qualification under Medicare, § 1395x(r)(3) defines a doctor
of podiatric medicine "for the purposes of subsections (k), (m),
(p)(1) and (s) of this section [the Medicare statute] . . . ."
There are similar qualifications for optometrists and
chiropractors.   Sections 1395x(r)(4) and (5) define these doctors
only for purposes of certain *Medicare* provisions; § 1395x(r)(4)
reads: "a doctor of optometry, *but only for purposes of*
subsection (p)(1) and with respect to the provision of items or
services described in subsection (s) of this section which he is
legally authorized to perform as a doctor of optometry by the
State in which he performs them;" § 1395x(r)(5) provides: "a
chiropractor who is licensed as such by the State (or in a State
which does not license chiropractors as such, is legally
authorized to perform the services of a chiropractor in
jurisdiction in which he performs such services), and who meets
uniform minimum standards promulgated by the Secretary, *but only*
*for the purposes of subsections (s)(1) and (s)(2)(A) of this*
*section* and only with respect to treatment by means of manual
manipulation of the spine (to correct a subluxation) which he is

1  legally authorized to perform by the State or jurisdiction in

2  which treatment is provided."  Contrary to plaintiffs' argument,

3  these qualifications suggest that the statute was intended to

4  describe these types of doctors only with respect to Medicare.

5       Finally, the court does not find plaintiffs' citation to the

6  Quevedo-Mendoza email and Smith Letter persuasive.  First, other

7  than a conclusory citation to Skidmore in one sentence of its

8  moving papers, plaintiffs fail to demonstrate what level of

9  deference, if any at all, should be paid by this court to these

10 types of opinion statements.  Moreover, and more significantly,

11 plaintiffs wholly fail to describe how these specific opinions

12 relate to the present issues.  It is not clear that the Menodoza

13 email supports plaintiffs' position at all, as her remarks could

14 also be construed as indicating that States may not withdraw

15 coverage of FRADS services provided by RHC/FQHCs, rather than

16 general adult dental services.  Similarly, the full context of

17 the Smith Letter is not clear.  It appears he was addressing only

18 specific provider types, including clinical psychologists, social

19 workers and nurse practitioners that provide a particular

20 classification of services (behavioral services).  Thus, it is

21 not apparent that his remarks, made nearly seven years ago in

22 2003, even address the pertinent issue here.

23      Accordingly, considering the relevant statutes' clear

24 direction, the court must find that Medicaid's plain and

25 unambiguous definition of "physicians' services" controls the

26 scope of RHC/FQHC services required under federal Medicaid law.

27 Because that definition renders only the services of doctors of

28 medicine and osteopathy mandatory services, plaintiffs have not

shown a conflict in federal and state law.  § 14131.10's
exclusion of adult dental, podiatric and chiropractic services is
not in conflict with the mandates of federal Medicaid law, and
thus, plaintiffs' motion for summary judgment on their claim of
federal preemption is denied.

## 2. Prior Approval of SPAs

Plaintiffs argue defendants have violated federal law by
implementing § 14131.10 without first receiving approval of their
proposed SPA.  Such prior approval is required, contend
plaintiffs, by Ninth Circuit precedent.  See Exeter Memorial
Hosp. Ass'n v. Belshe, 145 F.3d 1106 (9th Cir. 1998), relying on
Washington State Health Facilities Ass'n v. Washington Dep't of
Soc. & Health Servs., 698 F.2d 964 (9th Cir. 1982) and Oregon
Ass'n of Homes for the Aging, Inc. v. State of Oregon, 5 F.3d
1239 (9th Cir. 1993).  In Exeter, a Medicaid provider brought a
§ 1983 action seeking a preliminary injunction to require DHCS to
stop enforcement of its new Medi-Cal reimbursement rates prior to
approval of a state plan amendment submitted to HHS.  The court
held, reaffirming its prior holdings in Washington State Health
and Oregon Ass'n of Homes, that Plan "amendments changing payment
methods and standards require [prior federal] approval."  145
F.3d at 1108.  The court emphasized that its holding was not
based on particular statutory language relating to plan
amendments but rather on the "overall statutory framework."  Id.
That framework the court held required that "all plans receive
approval by the federal government before they may be
implemented, and that all amendments to plans must also be
federally approved."  Id.  The court held that in Washington

1  State Health, it determined that from these requirements

2  "logically flows the requirement that amendments to plans must be

3  approved before implementation."   Id.

4       Defendants contend: (1) plaintiffs have no enforceable right

5  to challenge a SPA; defendants contend that only the Secretary of

6  HHS can challenge defendants' implementation of § 14131.10

7  without CMS approval (citing 42 U.S.C. § 1396c); (2) Exeter is

8  distinguishable because it considered now repealed provisions of

9  the Medicaid Act (the so-called Boren Amendment), and thus, its

10 holding is inapplicable; and (3) in practice, CMS has

11 consistently allowed DHCS to implement changes to pending SPA

12 approvals to avoid significant delays in implementing

13 reimbursement and/or benefit increases or reductions.

14      Each of defendants' arguments is unavailing.  First, § 1396c

15 does not preclude plaintiffs' pursuit of this action; it merely

16 authorizes the Secretary of HHS to terminate State funding if he

17 finds that a State Plan is not in compliance with federal law.

18 The statute does not preclude a private suit by a provider.

19 Moreover, in Exeter, Washington State Health and Oregon Ass'n of

20 Homes, the Ninth Circuit permitted similar challenges under

21 § 1983:  In Exeter, a Medicaid provider brought a § 1983 action

22 seeking a preliminary injunction to require DHCS to stop

23 enforcement of new Medi-Cal reimbursement rates prior to approval

24 of a SPA by HHS; in Washington State Health, plaintiff

25 association of health facilities sought to enjoin the Secretary

26 of Washington State Department of Social and Health Services from

27 enforcing a state regulation that conflicted with the federally

28 approved State Medicaid Plan until the amendment to the plan was

1   approved by HHS; in <u>Oregon Ass'n of Homes</u>, nursing homes brought

2   an action challenging California's reclassification of nursing

3   services into rate categories receiving lower reimbursement under

4   the State's Medicaid Plan on the ground the State failed to

5   submit a SPA to HHS.  Thus, controlling law in this circuit

6   permits the very type of challenge brought by plaintiffs in this

7   case.  Indeed, in <u>Washington State Health</u>, the court expressly

8   held that while plaintiffs did not plead a cause of action under

9   § 1983, "it is clear that they are properly in federal court

10  under this provision."  698 F.2d at 965 n. 4.

11       Second, <u>Exeter</u> controls here.  The Ninth Circuit did not tie

12  its holding to any specific statutory language, and thus, the

13  subsequent repeal of the Boren Amendment does not render the

14  decision inapposite to this case.  The Ninth Circuit based its

15  decision on the "overall statutory framework," finding that

16  considered as a whole, that framework required that amendments to

17  plans be approved before implementation.  145 F.3d at 1108.

18  In fact, the arguments defendants raise here were specifically

19  rejected by this court in the underlying decision in <u>Exeter</u> which

20  the Ninth Circuit expressly adopted.  <u>Id.</u> (stating "[w]e adopt

21  [Judge Levi's] opinion in <u>Exeter Memorial Hosp. Ass'n v. Belshe</u>,

22  943 F. Supp. 1239 (E.D. Cal. 1996)" holding "*approval is required*

23  *before implementation of amendments to the Plan*") (emphasis

24  added).  Defendants argue that 42 C.F.R. §§ 430.16 and 447.256

25  support the view that "by its own regulations, the federal

26  Medicaid statute permits implementation of a rate change before a

27  state submits a SPA" or seeks approval of any amendment.  To the

28  contrary, Judge Levi found that § 447.256©, requiring that a

"State Plan amendment that is approved will become effective not earlier than the first day of the calendar quarter in which an approvable amendment is submitted" must be read consistently with the proposition that plan amendments must be approved prior to any implementation--as the regulation provides that a SPA will "become" effective retroactively but only after federal approval. 943 F. Supp. at 1244. Judge Levi also rejected the argument that the regulations establish that CMS' request for more information operates as an "approval." Instead, he held the regulations make clear that a plan is "approved" only when CMS is satisfied with the State's assurances that the amended plan remains in compliance with the Act. Id.; 42 C.F.R. §§ 447.253(a); 430.16.

Thus, as Judge Levi held, to permit implementation of a SPA without federal approval would enforce a reimbursement plan for an indeterminate period,[12] that has never been approved, that may not be approved, and that may be inadequate under the law. This would be wholly "inconsistent with the function of the State plan, the approval process for the State plans and amendments, and the [express federal] directive that the States 'must pay' reimbursement according to the methods specified in an approved State plan." 943 F. Supp. at 1243.

Finally, defendants' claims that CMS has in practice permitted such prior implementation of a SPA is not relevant to the court's legal inquiry--what may happen in practice does not control what the law requires. (See Orlich Decl., filed Sept.

---

[12] Once the agency requests more information the 90 day clock stops indefinitely.

22, 2010 [Docket #19-3].)[13]

Plaintiffs are entitled to a declaration providing that defendants' implementation of § 14131.10 prior to receipt of federal approval of its SPA violates federal law, and as in Exeter, an injunction enjoining implementation of § 14131.10 with respect to the at-issue services until the State's SPA is approved by CMS.[14]

---

[13]   Vickie Orlich, Division Chief of the Benefits, Waiver Analysis and Rates Division of DHCS, declared that "CMS has consistently allowed DHCS to implement changes in the scope of benefits or in payment methodologies before issuing approval of a SPA.  CMS has always allowed DHCS to claim and receive federal Medicaid funding in accord with scope of benefit or reimbursement methodology changes pending their reviewing of a SPA concerning the particular changes.  I am not aware of CMS ever requesting DHCS to postpone implementation of a SPA scope of benefit or reimbursement methodology change until CMS has approved the SPA." (Id. at ¶ 10.)

[14]   Defendants did not oppose plaintiffs' motion on the issue of irreparable harm, and the court finds based on the proffered evidence set forth above, that plaintiffs have shown sufficient irreparable harm if an injunction does not issue. Plaintiffs' monetary injuries are deemed to constitute irreparable harm because DHCS' status as a branch of the State government bars plaintiffs from recovering damages in federal court under Eleventh Amendment sovereign immunity protections. See California Pharmacists Ass'n v. Maxwell-Jolly, 563 F.3d 847, 851-52 n. 2 (9th Cir. 2009) ("[B]ecause the Hospital Plaintiffs and their members will be unable to recover damages against the Department even if they are successful on the merits of their case, they will suffer irreparable harm if the requested injunction is not granted.")
Defendants likewise do not oppose the motion on the issue of the balance of equities.  To the extent the court finds a legal violation, defendants do not dispute the balance of equities tips in favor of issuance of an injunction.  Here, there is no outweighing, countervailing interest; while California has sought to implement § 14131.10 as a budget measure, under the circumstances, that interest does not outweigh plaintiffs' essential role in California's health care safety net, the need for continued Medicaid reimbursement to sustain the delivery of services to Medicaid and uninsured beneficiaries, and the interests of Medicaid beneficiaries in receiving the full scope of RHC/FQHC services benefits as defined by Congress.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part.  The motion is DENIED with respect to the issue of federal preemption; plaintiffs have not shown that § 14131.10 conflicts with federal law mandates under the Medicaid Act.  However, plaintiffs' motion is granted with respect to their challenge to defendants' implementation of § 14131.10 without first receiving CMS approval of their proposed SPA.  As to that issue, plaintiffs are entitled:

(1)  to a declaration providing that defendants' implementation of § 14131.10 prior to receipt of federal approval of its SPA violates federal law; and

(2)  an injunction enjoining further implementation of § 14131.10 with respect to the subject adult dental, podiatry and chiropractic services until the State's SPA is approved by CMS.

The Clerk of the Court is directed to close this file.

IT IS SO ORDERED.

DATED: October 18, 2010

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE