UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF CALIFORNIA

                         ----oo0oo----

CALIFORNIA ASSOCIATION OF
RURAL HEALTH CLINICS and
AVENAL COMMUNITY HEALTH
CENTER,
                                    NO. CIV. S-10-759 FCD/EFB

        Plaintiffs,

    v.                              MEMORANDUM AND ORDER

DAVID MAXWELL-JOLLY, Director
of California Department of
Health Services; TOBY DOUGLAS,
Chief Deputy Director for
Health Care Programs of the
California Department of
Health Care Services; and the
CALIFORNIA DEPARTMENT OF
HEALTH CARE SERVICES,

        Defendants.

                         ----oo0oo----

        This matter is before the court on plaintiffs California

Association of Rural Health Clinics ("CARHC") and Avenal

Community Health Center ("ACHC") (collectively, "plaintiffs")

motion for summary judgment.  The parties agree this case

presents purely legal questions involving the federal Medicaid

law definitions of mandatory Rural Health Clinic ("RHC") and

                                1

Federally-Qualified Health Center ("FQHC") services benefits, and thus, resolution of the case via plaintiffs' motion for summary judgment is appropriate.[1]

Plaintiffs contend Congress defined both Medicare and Medicaid RHC and FQHC services benefits to include the Medicare core services[2] identified in 42 U.S.C. § 1395x(aa)(1), which plaintiffs assert requires both programs to reimburse RHCs and FQHCs for the services of medical doctors, dentists, and subject to certain limitations, the services of optometrists, podiatrists and chiropractors. California's Medicaid program, Medi-Cal, formerly reimbursed RHCs and FQHCs for adult dental, chiropractic, optometric and podiatric services. However, on February 19, 2009, the California legislature adopted California Welfare & Institutions Code § 14131.10 ("§ 14131.10") which ended coverage of certain Medicaid benefits to the extent they are "optional" under federal law, including, among others not relevant here, adult dental, podiatry, optometry, and chiropractic services, beginning July 1, 2009.

---

[1]     Defendants filed various objections to plaintiffs' evidence submitted on the motion (Docket #19). However, the parties agree the issues presented by plaintiffs' motion are wholly legal issues. Plaintiffs' proffered evidence provides simply context to the issues and any disputed facts created by the evidence are not material to resolution of the motion. Therefore, the court overrules defendants' objections directed at the various declarations submitted by plaintiffs in support of the motion.

[2]     The term "core" services is not used in the statutory scheme at issue here; however, the parties use the term in their papers to reference those services they contend are mandatory services for which RHCs and FQHCs are required to be reimbursed under Medicaid Act. Accordingly, the court likewise uses the term in the same respect herein.

1        Since that date, defendant California Department of Health
2    Care Services ("DHCS"), the state agency that administers the
3    Medi-Cal program, has discontinued reimbursement to RHCs and
4    FQHCs for most of these services provided to Med-Cal
5    beneficiaries.   In opposing the motion, defendants describe that
6    they recently reinstated reimbursement for optometry services
7    provided by RHC/FQHCs, having determined that the Medicaid Act
8    requires payment for optometry services, even if not included in
9    the State Medicaid Plan ("State Plan"), *if* the State Plan had
10   previously provided these services (42 U.S.C. § 1396d(e)).
11   Defendants indicate reimbursement will be retroactive to July 1,
12   2009.   Thus, at issue on the motion is only § 14131.10's
13   exclusion of coverage of adult dental, podiatry and chiropractic
14   services.

15       By this action, plaintiffs, an association of RHCs
16   (plaintiff CARHC) an a FQHC (plaintiff ACHC), seek declaratory
17   and injunctive relief to stop the continued implementation of
18   § 14131.10 in a manner that they allege conflicts with the
19   federal statutory mandates to reimburse RHCs and FQHCs for
20   providing the subject adult dental, podiatry and chiropractic
21   services.   Plaintiffs contend that under the Supremacy Clause,
22   applicable federal law preempts any State law excluding these
23   mandatory services benefits from coverage.   Additionally,
24   plaintiffs contend that defendants have violated federal law
25   because DHCS has not received federal approval of its proposed
26   changes to the State Plan reflected in § 14131.10, discontinuing
27   reimbursement of RHCs and FQHCs for these core services.

28

1    Defendants oppose the motion, arguing preliminarily that
2  plaintiffs' motion should be denied because a private right of
3  action does not exist to bring either of plaintiffs' claims.
4  Alternatively, defendants request a stay of the action.  Should
5  the court reach the merits of the action, defendants argue the
6  at-issue services are optional benefits which are not statutorily
7  mandatory services for which RHCs and FQHCs are required to be
8  reimbursed.  Accordingly, the state law's exclusion of coverage
9  for these services is permissible, and thus, there is no conflict
10  with federal law.  Defendants further contend that federal law
11  does not require that they receive prior federal approval before
12  implementation of any changes to the State Plan.

13    The court heard oral argument on the motion on October 8,
14  2010.  By this order, it now renders its decision, GRANTING in
15  part and DENYING in part plaintiffs' motion.  The court finds
16  that plaintiffs have a right under federal law to bring both of
17  their claims, and there is no basis to stay the action.  As for
18  the merits, the courts finds that plaintiffs have not
19  demonstrated § 14131.10 conflicts with federal law as the subject
20  benefits are not mandatory services under federal Medicaid law
21  required to be reimbursed to RHCs and FQHCs.  However, federal
22  law does require prior federal approval of changes to the State
23  Plan at issue here, and thus, plaintiffs are entitled to a
24  declaration finding as such as well as an injunction precluding
25  further enforcement of § 14131.10 with respect to the subject
26  benefits until the State's plan amendment is approved.

27
28

4

1

BACKGROUND[3]

2
### 1.   General Factual Background

3
Plaintiff CARHC is a California non-profit corporation,

4 whose mission is to provide education and advocacy regarding the

5 role of California's RHCs in the rural health care delivery

6 system in order to further the interests of RHCs and their

7 patients.  (Defs.' Resp. to Pls.' Stmt. of Undisp. Facts ["RUF"],

8 filed Sept. 22, 2010, ¶ 6.)  CARHC currently includes in its

9 membership 65 health care providers each of which is certified by

10 the United States Department of Health & Human Services' Center

11 for Medicare and Medicaid Services ("CMS") as a RHC, as defined

12 for purposes of the Medicaid Program in 42 U.S.C.

13 § 1396d($l$)(1).  (RUF ¶ 7.)  RHCs operate in designated medically

14 underserved rural areas.  Many CARHC's members are enrolled in

15 the Medi-Cal program as providers and have provided dental and

16 podiatry services to Medi-Cal beneficiaries.  (RUF ¶ 8.)  CARHC

17 brings this suit on its own behalf and in its representative

18 capacity on behalf of its members who have been directly and

19 adversely affected by the discontinuation of Med-Cal

20 reimbursement for dental, podiatry, optometry or chiropractic

21 services.  (RUF ¶s 9-10.)

22
Plaintiff ACHC is a California non-profit corporation with

23 its principal place of business in Avenal, California, a

24

25          [3]     In some limited respects, defendants dispute the facts
26 as proffered by plaintiffs in their statement of undisputed
   facts.  However, to the extent there is a dispute of fact, the
   court does not find it material to the legal issues presented by
27 the motion, and thus, it treats the relevant fact as undisputed.
   Unless otherwise noted, the court finds the facts as described
28 below undisputed.

designated medically underserved area.  (RUF ¶ 12.)  Avenal is also a designated dental professional shortage area.[4]  (RUF ¶ 13.)  ACHC is an approved FQHC as defined by the Medicaid Program in 42 U.S.C. § 1396(*l*)(2), and provides health care services to Medi-Cal recipients, among others.  (RUF ¶s 16-17, 18.)  As an FQHC, ACHC is required to provide care to all patients without regard to their ability to pay for such services.  (RUF ¶ 19.)  ACHC, as well as other FQHCs, are also required to maintain sliding fee scale policies that provide for, among other things, a 100% discount to patients whose incomes are below 100% of the Federal Poverty Guidelines, permitting only a nominal charge.  (RUF ¶ 20.)

Both RHCs and FQHCs can seek federal reimbursement for certain health services provided to Med-Cal beneficiaries; not all services, however, provided by these types of clinics are reimbursable.  (See RUF ¶s 18, 23, 28, 45, 46.)

In February 2009, in response to California's fiscal emergency, the California legislature enacted budget measures to reduce certain state programs, including through § 14131.10, the elimination of coverage for certain Medicaid benefits it deemed "optional" under federal law.  In pertinent part, § 14131.10 provides:

> (a) Notwithstanding any other provision of this chapter, . . . in order to implement changes in the level of

---

[4]   Such a designation identifies areas as having a shortage of dental providers on the basis of availability of dentists and dental auxiliaries.  In order to receive the designation, an area must have a dentist-to-population ratio below a set minimum and demonstrate a lack of access to dental care in surrounding areas because of distance, overutilization or access barriers.  (RUF ¶s 14-15.)

6

funding for health care services, specific optional
benefits are excluded from coverage under the Medi-Cal
program.

(b)(1) The following optional benefits are excluded from
coverage under the Medi-Cal program:

(A) Adult dental services, except as specified in
paragraph (2).

. . .

(D) Chiropractic services.
(E) Optometric and optician services, including services
provided by a fabricating optical laboratory.
(F) Podiatric services.[5]

• • •

(2) Medical and surgical services provided by a doctor
of dental medicine or dental surgery, which if provided
by a physician, would be considered covered physician
services, and which services may be provided by either
a physician or a dentist in this state, are covered.

. . .

(d) This section shall only be implemented to the extent
permitted by federal law.

The law became effective July 1, 2009.  Prior to that time, RHCs

and FQHCs were reimbursed for these services.  (RUF ¶s 24-27.)

Plaintiffs maintain that as a result of defendants'

implementation of § 14131.10 since July 1, 2009, RHCs and FQHCs

have not received Medi-Cal reimbursement from DHCS for most adult

dental, podiatry, chiropractic and optometry services, other than

Federally-required adult dental services ("FRADS"), specified in

§ 14131.10(b)(2).

---

[5]     The statute also excludes from coverage under Medi-Cal
the following services which are not at issue on the motion:
acupuncture services; audiology and speech therapy services;
pyschology services; and incontinence creams and washes.  Cal.
Wel. & Inst. Code § 14131.10(b)(1)(B), (C), (G) and (H).

7

1  Specifically during this time, plaintiffs have received

2  significantly reduced Medi-Cal reimbursement for the services

3  eliminated by the statute.  (RUF ¶s 46-52.)  In that regard,

4  plaintiffs proffer evidence that:  Adventist Health RHCs have

5  received payments for dental and podiatry services for the period

6  July 1 to Dec. 31, 2009 that are 25 to 30% less than the payments

7  for dental and podiatry services for the first half of 2009.

8  (RUF ¶s 9-11, 48.)  Likewise, Medi-Cal payments for plaintiff

9  ACHC for dental, podiatry and optometry services for the period

10  July 1, 2009 to March 31, 2010, were approximately $19,000 per

11  month less than the payments for these services during the

12  preceding six months.  (RUF ¶ 53.)  Plaintiffs maintain that this

13  decrease in payment has occurred during a period when they have

14  seen an increase in demand from patients who are uninsured, and

15  maintain that over time, RHCs and FQHCs will be forced to

16  discontinue providing these services to their patients.  (RUF ¶s

17  49, 54-55, 57.)

18      **2.  <u>Essential Statutory Background</u>**

19          **a.  Federal Medicaid Law**

20  Title XIX of the Social Security Act (the "Medicaid Act")

21  establishes a cooperative federal-state program that provides

22  federal funding to states that choose to participate for medical

23  assistance to low-income persons. 42 U.S.C. § 1396.  Medicaid is

24  jointly financed by federal and state governments and

25  administered by the states through a Medicaid State Plan approved

26  by the Secretary for Health and Human Services ("HHS").  <u>Id.</u> at

27  § 1396a.  In exchange for federal matching funds, participating

28  states agree to comply with federal Medicaid laws and

8

regulations.  42 U.S.C. § 1396c; <u>see also</u> 42 C.F.R. § 430.35.
CMS administers the Medicaid program on the Secretary of HHS'
behalf, including approving State Plans.  A State Plan specifies
the services that the State has determined that it will provide.
42 U.S.C. § 1396d(a).  Each State Plan must include seven
specific types of medical services.  <u>Id.</u> at §§ 1396a(a)(10),
1396d(a)(1)-(5), (17), (21).  One of these seven services is
RHC/FQHC services, the scope of which is at issue in this case.
<u>Id.</u> at § 1396d(a)(2)(B) & (C).  California's Medicaid Program is
known as the California Medical Assistance Program, or
"Medi-Cal."  As the single state agency responsible for the
Medi-Cal program, DHCS supervises and administers the State Plan.
It also submits any amendments to the State Plan to CMS for
review and approval.  42 C.F.R. §§ 430.12, 430.14, 430.15.

Additionally, DHCS is responsible for ensuring that the
Medi-Cal program provides covered services to eligible
beneficiaries and for reimbursing providers for providing those
covered services in compliance with the State Plan and with
federal and state laws and regulations.  <u>Id.</u> at §§ 431.1, 431.10.
To be a covered service, the service must be included in the
State Plan and provided by an approved Medi-Cal provider to a
Medi-Cal beneficiary.  <u>See generally</u> 42 C.F.R. § 430.10.

**b.   RHC and FQHC Provisions under the Medicaid Act**

As stated above, Medicaid requires that participating
states, like California, include coverage for certain specified
services in their State Plan.  42 U.S.C. § 1396a(a)(10)
(referring to 42 U.S.C. § 1396d(a)(1)-(5), (17), (21) and (28)).
Section 1396a(a)(10) provides:

1   A State plan for medical assistance must – . . . (10)
2   provide-(A) for making medical assistance available,
    including at least the care and services listed in
3   paragraphs (1) through (5), (17), (21) and (28) of section
    1396d(a) of this title . . .

4   Section 1396d(a)(2) specifically addresses "rural health clinic

5   services" and "Federally-qualified health center services."[6]

6   A state may also "opt" to include in the State Plan any of the

7   other services listed in 42 U.S.C. § 1396d(a), such as dental

8   services.  See id. at § 1396d(a)(10).

9   Required Medicaid services thus include payment of RHC/FQHC

10  services.  Id. at § 1396d(a)(2)(B) & (C). Pursuant to said

11  Section, a state must provide "medical assistance" to RHC/FQHCs,

12  which: "means payment of part or all of the cost of the following

13  care and services . . .[:]"

14      (B) consistent with State law permitting such services,
        rural health clinic services (as defined in subsection
15      (l)(1) of this section) and any other ambulatory services
        which are offered by a rural health clinic (as defined in
16      subsection (l)(1) of this section) and which are otherwise
        included in the plan, and (C) Federally-qualified health
17      center services (as defined in subsection (l)(2) of this
        section) and any other ambulatory services offered by a
18

19  ───────────────────
20          [6]    Section 1396d(a)(1) addresses "inpatient hospital
    services (other than services in an institution for mental
    diseases);" Section 1396d(a)(3) addresses "other laboratory and
21  X-ray services;" Section 1396d(a)(4) addresses "nursing facility
    services;" Section 1396d(a)(5) addresses "(A) physicians'
22  services furnished by a physician (as defined in section
    1395x(r)(1) of this title), whether furnished in the office, the
23  patient's home, a hospital, or a nursing facility, or elsewhere,
    and (B) medical and surgical services furnished by a dentist
24  (described in section 1395x(r)(2) of this title) to the extent
    such services may be performed under State law either by a doctor
25  of medicine or by a doctor of dental surgery or dental medicine
    and would be described in clause (A) if furnished by a physician
26  (as defined in section 1395x(r)(1) of this title);" Section
    1396d(a)(17) addresses "services furnished by a nurse-midwife;"
27  Section 1396d(a)(21) addresses "services furnished by a certified
    pediatric nurse practitioner;" and Section 1396d(a)(28) addresses
28  "free standing birth center services."

Federally-qualified health center and which are otherwise included in the plan.

This provision defines "rural health clinic services" in reference to subsection *(l)*(1) of § 1396d and also gives a State the option to reimburse an RHC for providing other non-specified ambulatory State Plan services.  Subsection *(l)*(1) of § 1396d defines the terms "rural health clinic services" and "rural health clinic" as having the "meanings given such terms in section 1395x(aa) of this title, . . . . "  Similarly, § 1396d(a)(2)(C) defines "Federally-qualified health center services" in reference to subsection *(l)*(2) of  § 1396d and also gives a State the option to reimburse an FQHC for providing other non-specified ambulatory State Plan services.  Subsection *(l)*(2) of § 1396d defines the term "Federally-qualified health center services" to mean "services of the type described in subparagraphs (A) through (C) of section 1395x(aa)(1) of this title when furnished to an individual as a patient of a Federally-qualified health center . . . ."

Title 42 U.S.C. § 1395x(aa) defines both "rural health clinic services" and "Federally-qualified health center services" to include: "physicians' services" (§ 1395x(aa)(1)(A)); "physician assistant or a nurse practitioner" services (§ 1395x(aa)(1)(B)); "clinical psychologist" services (§ 1395x(aa)(1)(B)); "clinical social worker" services (§ 1395x(aa)(1)(B)); and in the case of a RHC, in an area in which there exists a shortage of home health agencies, part-time or intermittent nursing care and related medical supplies furnished by a registered professional nurse or licensed

11

1  practical nurse to a homebound individual under a written plan of
2  treatment (§ 1395x(aa)(1)(C)).

3       To this point, the parties agree on the above description of
4  the applicable law.  They also agree that "physicians' services"
5  as referenced in § 1395x(aa)(1) are considered the "core"
6  services for which RHC/FQHCs are entitled to be reimbursed under
7  Medicaid.  Where the parties diverge is in the next step:
8  defining "physicians' services."

9       Plaintiffs argue because § 1396d defines RHC and FQHC
10  services in reference to a *Medicare* provision--§ 1395x(aa)--the
11  court should similarly look to Medicare's definition of
12  "physician" which is contained in § 1395x(r) and includes: (1) "a
13  doctor of medicine or osteopathy" (§ 1395x(r)(1)); (2) "a doctor
14  of dental surgery or of dental medicine" (§ 1395x(r)(2)); (3) "a
15  doctor of podiatric medicine" (§ 1395x(r)(3)); (4) "a doctor of
16  optometry" (§ 1395x(r)(4)); and (5) "a chiropractor"
17  (§ 1395x(r)(5)).  Plaintiff thus argues that all of these
18  physicians' services must be reimbursed when provided by a RHC or
19  FQHC.  They assert that since Jan. 1, 2001, California's State
20  Plan defined RHC/FQHC services to includes these six
21  professionals, and § 14131.10 improperly denies reimbursement for
22  these mandatory services.

23       Defendants contend to the contrary that there is no legal
24  basis to turn to *Medicare* laws to define *Medicaid* requirements.
25  Medicaid specifically defines "physicians' services" in
26  § 1396d(a)(5)(A) as "services furnished by a physician (as
27  defined in section 1395x(r)(1) of this title."  Thus, it
28  incorporates only part of Medicare's definition of "physician"--

namely, subsection 1395x(r)(1), defining "physician" as "a doctor of medicine or osteopathy legally authorized to practice medicine and surgery by the State in which he performs such functions or action." Thus, defendants argue that certain services of dentists, optomotrists, podiatrists, and chiropractors are not mandatory services required to be reimbursed to RHCs and FQHCs.

Defendants emphasize that Medi-Cal continues to reimburse RHC/FQHCs for other mandatory services, including certain dental services, psychology and optometry services. 42 U.S.C. § 1396d(a)(5) and § 1396a(a)(10)(A). For example, defendants acknowledge that certain adult dental services are federally-required (the aforementioned "FRADS"); these include: "medical and surgical services furnished by a dentist (described in section 1395x(r)(2) of this title) to the extent such services may be performed under State law either by a doctor of medicine or by a doctor of dental surgery or dental medicine and would be described in clause (A) if furnished by a physician (as defined in section 1395x(r)(1) of this title)." 42 U.S.C. § 1396d(a)(5)(B). Section 14131.10(b)(2) specifically requires coverage for these services.[7]

---

[7]   As discussed more fully below, plaintiffs vigorously dispute this interpretation of Medicaid's requirements for payment of dental services. They maintain that federal law requires State Medicaid agencies to cover dental services more broadly when provided by a RHC/FQHC. Plaintiffs contend that the scope of coverage is determined by reference to the licensure category of the individual healthcare professional, rather than to a limited set of services covered when delivered by such a professional, citing § 1395x(aa)(1)(A)-(C). As support for its interpretation, plaintiffs cite a 2003 email of Bernadette Quevedo-Mendoza, of the Office of the Regional Administrator for CMS Region VII ) ("Quevedo-Mendoza email"), who advised the State of North Dakota that "dental services provided by the FQHC or RHC [must] be reimbursed even if the state drops optional dental

13

1    Defendants also acknowledge that Medicaid expressly includes

2  within the scope of covered mandatory RHC/FQHC services,

3  "services furnished . . . by a clinical psychologist or by a

4  clinical social worker . . . as would otherwise be covered if

5  furnished by a physician."  Id. at § 1395x(aa)(1)(B).  As such,

6  defendants point out that contrary to § 14131.10's exclusion of

7  psychology services as an "optional benefit," DHCS has continued

8  to reimburse RHC/FQHCs for these services, as the statute

9  expressly provides that it "shall only be implemented to the

10 extent permitted by federal law."  Cal. Wel. & Inst. Code

11 § 14131.10(d).

12    Finally, originally following the enactment of § 14131.10,

13 DHCS did not reimburse for optometric services.  However, DHCS

14 recently reinstated reimbursement for these services and the

15 reimbursement will be retroactive to July 1, 2009.  Defendants

16 concede the Medicaid Act requires payment for optometry services,

17 even if not included in the State Plan, *if* the State Plan had

18 previously provided these services.  42 U.S.C. § 1396d(e).  Such

19 is the case in California, and thus, defendants now agree that

20 despite § 14131.10's exclusion of coverage, DHCS must reimburse

21 RHCs and FQHCs for the provision of optometric services to Medi-

22 Cal beneficiaries.

23        **3.   Approval of State Plan Amendments**

24    The State Plan is a comprehensive written statement

25 submitted by DHCS, describing the nature and scope of its

26

27 ─────────────────
   services."  (RUF ¶ 39.)  Plaintiffs assert under Skidmore v.
28 Swift and Co., 323 U.S. 134, 140 (1944) such a federal agency's
   construction of a statute is entitled to "respect."

1  Medicaid program and assuring it will be administered in
2  conformity with the requirements of Medicaid law.   42 C.F.R.
3  § 430.10 & 447.252(b).   A State Plan must be approved by CMS
4  before the State can receive federal funds for its Medicaid
5  program.   42 U.S.C. § 1396, 1396b(a).   When a State seeks to make
6  changes to its approved State Plan, it must submit a State Plan
7  Amendment ("SPA") to CMS so CMS may determine whether the amended
8  State Plan continues to comply with federal requirements.   42
9  C.F.R. § 430.12.   CMS may approve or disapprove of the SPA or it
10 may request more information before making a determination.   Id.
11 at § 430.16.   If CMS fails to act upon a submitted SPA within 90
12 days, the amendment is deemed approved.   Id.   A request for more
13 information stops the 90-day clock.   Id. at §§ 430.16(a)(2);
14 447.256(b).

15      Here, DHCS submitted a SPA on June 30, 2009 which proposed
16 to substantially exclude coverage of the subject eight Medicaid
17 benefits provided by RHCs and FQHCs as stated in § 14131.10.
18 (RUF ¶s 32-34.)   On October 22, 2009, CMS advised DHCS that the
19 proposed SPA was not approvable as drafted and requested
20 additional information.   (RUF ¶ 35.)   To date, no SPA has yet
21 been approved excluding coverage of any of the Medicaid benefits
22 listed in § 14131.10.   (RUF ¶ 36.)

23                            **STANDARD**

24      Under Federal Rule of Civil Procedure 56, a court shall
25 grant a motion for summary judgment if there are no genuine
26 issues of material fact and the moving party is entitled to
27 judgment as a matter of law.   Fed. R. Civ. P. 56(c).   Here, the
28 parties agree that the material facts in this action are not in

1  dispute.   Thus, it is appropriate for the court to resolve the

2  purely legal questions presented by the action at the summary

3  judgment stage.

4                              **ANALYSIS**

5       1.  **Federal Preemption**

6          Preliminarily, defendants argue plaintiffs' first claim

7  fails because there does not exist a private right of action to

8  challenge § 14131.10 on the basis of federal preemption.[8]

9  Plaintiffs contend to the contrary that they have a private right

10 to pursue an action against defendants under 42 U.S.C. § 1983,

11 asserting a violation of the Supremacy Clause, on the basis of 42

12 U.S.C. § 1396a(bb) which mandates state payments for services

13 furnished by RHCs and FQHCs.   Section 1396a(bb) provides:   A

14 "State plan *shall provide for payment* for services . . .

15 furnished by a Federally-qualified health center and services . .

16 . furnished by a rural health clinic in accordance with the

17 provisions of this subsection."   (Emphasis added); <u>See also</u> §

18 1396a(bb)(2)-(4) repeating the same.   Subsections 1396a(bb)(5)(A)

19 and 1396a(bb)(6)(B) further provide the procedure and methodology

20 for payment of the services: "The State plan *shall provide for*

21 *payment* to the center or clinic of supplemental payments, no less

22 frequently than every 4 months, in the event that payments by

23 Medicaid managed care plans are less than the minimum

24

25 ─────────────────────

26        [8]    Defendants challenge the viability of plaintiffs'
    § 1983 claims, raising federal preemption and failure to receive
    federal approval of a SPA, solely on the ground of a lack of a

27 private right of action; they do not oppose plaintiffs' motion on
    the issues that (1) plaintiffs are "persons" entitled to relief

28 under § 1983 and (2) the individual defendants acted under color
    of state law as required by § 1983.

                                   16

1  reimbursement rate determined under 1396a(bb)."  42 U.S.C.

2  § 1396a(bb)(5)(A) (emphasis added).  Providing for an alternative

3  payment methodology, § 1396a(bb)(6)(B) provides that such

4  methodology must "*result[] in payment* to the center or clinic of

5  an amount which is at least equal to the amount otherwise

6  required to be paid to the center or clinic under this section."

7  <u>Id.</u> at § 1396(bb)(6)(B) (emphasis added).

8     In <u>Blessing v. Freestone</u>, 520 U.S. 329, 340 (1997), the

9  Supreme Court established a three prong test for determining

10  whether a particular federal statute can be enforced through a

11  private right of action under Section 1983.  The <u>Blessing</u> test

12  requires that: (1) Congress intended the statutory provision to

13  benefit the plaintiff; (2) the asserted right is not so "vague

14  and amorphous" that its enforcement would strain judicial

15  competence; and (3) the provision couch the asserted right in

16  mandatory rather than precatory terms.  <u>Id.</u>  In <u>Gonzaga</u>

17  <u>University v. Doe</u>, 536 U.S. 273, 284 (2002), the Court emphasized

18  that in finding a private right of action, "a court must be

19  careful to ensure that the statute at issue contains

20  'rights-creating language' and that the language is phrased in

21  terms of the persons benefitted, not in terms of a general

22  'policy or practice.'"

23     Plaintiffs concede the Ninth Circuit has yet to address the

24  issue; however, they rely on several other circuits' decisions

25  which have found that § 1396a(bb) gives rise to a right

26  enforceable under Section 1983 because the statute evidences

27  Congress' intent to benefit RHC/FQHCs, and it requires action on

28  the part of the states, *i.e.*, that the states reimburse RHC/FQHCs

17

for services provided to Medicaid patients.  For example, in <u>Pee Dee Health v. Sanford</u>, 509 F.3d 204 (4th Cir. 2007), the Fourth Circuit held that § 1396a(bb) contained the type of "rights-creating" language required by <u>Gonzaga</u>, thus establishing a private right of action.  There, plaintiff Pee Dee was a RHC serving Medicaid recipients and it brought a claim alleging that the reimbursement formula used by the South Carolina Medicaid agency violated Pee Dee's statutorily conferred right to proper reimbursement under § 1396a(bb).  In this case of first impression, where the court considered whether § 1396a(bb) "read as whole" provided a private right of action,[9] the Fourth Circuit held that Congress intended in § 1396a(bb) to benefit RHCs as they are specifically described by the statute which designates them as the recipient of payment, the rights conferred by the statute were not vague, and mandatory action was required by the states (they are directed to "provide for payment of services . . . furnished by" RHCs).  Thus, all of the <u>Blessing</u> factors were met, permitting Pee Dee's action under § 1396a(bb).  <u>Id.</u> at 211.

Similarly, in <u>Rio Grande Community Health Center, Inc. v. Rullan</u>, 397 F.3d 56, 74 (1st Cir. 2005), the First Circuit concluded that FQHCs could bring an action under § 1983 to enforce § 1396a(bb)(5)(A)'s requirements for the calculation of and time frame for supplemental payments.  The court found the statutory language that a "State plan 'shall provide for payment to [FQHCs] . . . by the State of a supplemental payment" to be

---

[9]      In previous cases, courts had considered whether certain subsections of § 1396a(bb) provided a private right of action.  <u>See e.g.</u> <u>Rio Grande</u> below.

1  rights-creating language which was mandatory and had a clear

2  focus to benefit FQHCs, rather than the regulated states.   Id.;

3  accord Concilio de Salud Integral de Loisa, Inc. v.

4  Perez-Perdomo, 551 F.3d 10, 17-18 (1st Cir. 2008) (finding FQHCs

5  had the right, under § 1983, to enforce § 1396a(bb)'s

6  reimbursement methodology to ensure that supplemental payments

7  were properly calculated and made); see also Chase Brexton Health

8  Services, Inc. v. Marlyand, 411 F.3d 457, 459-60 (4th Cir. 2005)

9  (FQHCs had the right to challenge state's method of calculating

10 reimbursement); Community Health Ctr. v. Wilson-Coker, 311 F.3d

11 132, 135-36 (2nd Cir. 2002) (FQHC could bring challenge to

12 State's reimbursement formula as violating federal law).

13      Defendants contend that these cases are distinguishable

14 because what is at issue here is the *scope* of covered services,

15 not § 1396a(bb)'s right of reimbursement.   Defendants assert

16 § 1396a(bb) only addresses the rights of these providers to

17 receive payment for services; it does not address the scope of

18 such services.   And, the applicable statutes establishing what is

19 a covered service (either § 1396x(r)(1)-(5) as asserted by

20 plaintiffs or § 1396x(r)(1) only as asserted by defendants) are

21 purely definitional and have no rights-creating language

22 establishing a private right of action to enforce the provisions.

23      Defendants' argument is both incorrect and circular.

24 First, § 1396a(bb)(1) specifically identifies the set of services

25 that must be reimbursed by State Medicaid agencies, like DHCS:

26      Beginning with fiscal year 2001 with respect to services
        furnished on or after January 1, 2001, and each succeeding
27      fiscal year, the State Plan shall provide for payment
        for services described in section 1396d(a)(2)(C) furnished
28      by a [FQHC] and services described in section 1396d(a)(2)(B)

19

1    furnished by a [RHC] in accordance with the provisions of
2    this subsection.

3  Thus, contrary to defendants' characterization, Section 1396a(bb)
4  *does* define the scope of services for which RHC/FQHCs are
5  entitled to reimbursement.  Accordingly, there is no factual
6  basis to distinguish the decisions of the First, Second and
7  Fourth Circuits finding a private right of action under
8  § 1396a(bb).

9      Moreover, defendants appear to be arguing that because
10 § 1396a(bb) incorporates defined terms it cannot give rise to a
11 private right of action.  However, they cite no case law in
12 support of this argument.  Indeed, defendants concede that the
13 First, Second and Fourth Circuits have recognized private rights
14 of action for RHC/FQHCs to enforce § 1396a(bb).  This right would
15 be meaningless if its exercise did not extend to ensuring a
16 provider's ability to receive payment for *particular* services
17 which federal law requires State programs to cover.

18     Finally, contrary to defendants' argument, plaintiffs here
19 are pressing their own rights to restore coverage for services
20 State Medicaid programs are required to cover, thereby insuring
21 they will receive payment for furnishing these mandatory
22 services.  Plaintiffs are not bringing suit on behalf of plan
23 beneficiaries, trying to effectuate beneficiaries' rights to
24 particular services, and thus, there is no standing impediment.

25     In sum, plaintiffs properly rely on § 1396a(bb) as the
26 source of the right they seek to enforce by this action; as
27 consistently recognized by several other circuits, said statute
28 affords a private right of action under the test as enunciated by

1    the Supreme Court in <u>Blessing</u> and <u>Gonzaga</u>.[10]

2         As to the merits, plaintiffs' Supremacy Clause claim is

3    predicated upon a theory of federal conflict preemption.  Under

4    general principles of federal preemption, state law is preempted

5    only to the extent that it actually conflicts with federal law.

6    Such a conflict may arise either where compliance with both

7    federal and state regulations is a physical impossibility, or

8    where state law stands as an obstacle to the accomplishment and

9    execution of the full purposes and objectives of Congress.

10   Conflict preemption, in which compliance with both federal and

11   state law is impossible, occurs when the State law would allow a

12   different result than the applicable federal law.  <u>See</u> <u>Cal.</u>

13   <u>Pharm. Ass'n v. Maxwell-Jolly</u>, 630 F. Supp. 2d 1154, 1158 (C.D.

14   Cal. 2009), citing <u>Pacific Gas & Elec. Co. v. State Energy</u>

15   <u>Comm'n</u>, 461 U.S. 190, 204 (1983).

16        As set forth above, plaintiffs claim that § 14131.10

17   improperly excludes coverage for core services benefits which

18   federal law requires States to pay for when furnished by a

19   RHC/FQHC.  Such services, plaintiffs contend, are mandatory since

20

21        [10]    Because the court finds that a private right of action
     exists, it need not consider defendants' argument that the court
22   should nonetheless stay the action pending their pursuit of three
     certiorari petitions before the Supreme Court.  Defendants
23   contend that before the Supreme Court is the issue of whether a
     private party may bring a Supremacy Clause claim when it lacks a
24   private right of action under Section 1983.  Plaintiffs dispute
     this description of the pending issue, claiming that the
25   certiorari petitions are wholly unrelated to this action as they
     involve the issue of whether the State is required under the
26   Medicaid statutes to assess the impact on the quality of care and
     access to care before rate changes are implemented.  The court
27   need not resolve this dispute as it finds a private right of
     action does exist and therefore must reach the merits of this
28   action.

1  "physician" is defined to include, among others, dentists,

2  podiatrists, and chiropractors.  42 U.S.C. § 1395(r)(1) to (5).

3       Plaintiffs maintain this Medicare definition applies, as

4  opposed to the general definition of "physicians' services"

5  applicable to all Medicaid providers that are not RHC/FQHCs, (1)

6  as a matter of straight statutory construction and/or (2) because

7  Congress "clearly intended" the scope of reimbursable RHC/FQHC

8  services under Medicaid to be broader than for other Medicaid

9  providers.

10      Plaintiffs contend the applicable statutes mandate this

11 court apply the Medicare definition of "physician" to define the

12 mandatory services since the Medicaid Act incorporates a Medicare

13 definition of RHC and FQHC services.  According to plaintiffs,

14 the court must stay within the confines of Medicare to further

15 define the applicable services.

16      With respect to Congressional intent, plaintiffs cite

17 § 1396d(a)(2)(B) and (C) which require the State to pay RHC/FQHCs

18 for all services defined by subsection *(l)*(1) and (2) *and* any

19 other ambulatory services offered by the providers which are

20 otherwise included in the plan.  The statutes also require

21 payment to RHC/FQHCs for services provided by these providers'

22 physician assistants, nurse practitioners, clinical

23 psychologists, or clinical social workers.  § 1395x(aa)(1)(B).

24 This plaintiffs argue demonstrates that Congress wanted to ensure

25 access to a more comprehensive set of minimum benefits when

26 services were furnished by RHC/FQHCs who care for medically

27

28

underserved communities.[11]

Plaintiffs also assert the court should give deference to two statements of opinion by CMS which they allege support their interpretation of the statutes at issue.  First, plaintiffs' contend the court should defer to the Quevedo-Mendoza email wherein Quevedo-Mendoza told the State of North Dakota that even if it rendered dental services optional, reimbursement must continue with respect to RHC/FQHCs for these services.  (See n. 7 supra.)  Plaintiffs also cite a 2003 opinion letter of Dennis Smith, CMS' Director (the "Smith Letter"), wherein he stated that "the definition of FQHC services is the same for Medicaid as it is for the Medicare program."  (RUF ¶ 43.)

Defendants respond that plaintiffs' argument is premised on an erroneous interpretation that the federal *Medicare* definition of "physician" governs for purposes of RHC/FQHC services provided

---

[11]    At oral argument, plaintiffs abandoned their Congressional intent argument raised in their reply, and instead argued that the statutes were clear, on their face, and thus, the court need look no further than the plain statutory language to find in their favor.  The court does not agree for the reasons set forth below.  However, as a result of plaintiffs' concession at oral argument, the court does not consider the issue of Congressional intent herein.  The court will note, nonetheless, that plaintiffs' argument regarding Congressional intent is more properly construed as an extension of their statutory construction argument, as they do not proffer any legislative history or other outside sources in support of their argument, but rather cite to other *statutory* provisions and argue that this court can glean Congressional intent from those provisions.
    For the first time, in the supplemental brief plaintiffs filed on October 18, 2010 (Docket #s 26, 26-1), they offer certain legislative history addressing the development of the RHC services benefit; however, the court will not consider that evidence as plaintiffs were only permitted to address 42 C.F.R. § 440.240 in their supplemental brief.  Moreover, plaintiffs proffer no reason why they could not have supplied the court with the legislative history earlier.  Finally, their reliance on the materials is wholly inconsistent with the position they took at oral argument.

to a *Medicaid* recipient.  Defendants argue it is significant that

Medicaid and Medicare define physician differently as set forth

above:  Medicaid limits the term to doctors of medicine and

osteopathy (§ 1396d(a)(5)(A) [limiting the definition of

"physician" to the definition in § 1395x(r)(1) only) while

Medicare defines the term to include these doctors as well as

dentists, podiatrists, optometrists and chiropractors

(§ 1395x(r)(1)-(5)).  Defendants emphasize case law recognizing

that identical words in the same statutory scheme "need not have

the same meaning 'when the identical word is used in different

provisions that address disparate subjects."  (Opp'n, filed Sept.

22, 21010, at 14-15.)  Here, defendants argue given the different

patient populations of Medicaid--low income persons--versus

Medicare--the elderly--it is logical that the programs may have

differing scopes and limitations.  Since the court is considering

application of Medicaid's requirements, defendants assert the

court should turn to Medicaid's definitions unless the statute

expressly requires otherwise.[12]

---

[12]   At oral argument, defendants additionally relied on 42 C.F.R. § 440.240, arguing that this regulation supported their construction of the applicable statutes requiring that the term "physician" be defined the same for all Medicaid providers. Plaintiffs were not familiar with the regulation and requested time to file a supplemental brief addressing the regulation; the court permitted plaintiffs leave to do so, directing the parties to file simultaneous briefing, within 10 days of the hearing and not to exceed 5 pages in length, addressing the regulation's relevance to the statutes at issue.

     The court has considered the parties' supplemental briefing and contrary to defendants' argument, the court does not find § 440.240 relevant.  It addresses the concept of "comparability" among Medicaid *recipients,* not *providers*, requiring that when a State elects to cover optional "medically needy recipients," the State plan must provide the same services to these persons as the statutorily mandatory "medically needy" patients.  The regulation does not address the issue here;

1    The court agrees with defendants' construction argument, as

2  the starting point must be the statutory language itself.  It has

3  long been the rule that "when the statutory language is plain,

4  the sole function of the courts . . . is to enforce it according

5  to its terms." <u>Arlington Cent. Scho. v. Murphy</u>, 548 U.S. 291,

6  296-97 (2006).  Here, nothing in the applicable statutes directs

7  this court to the Medicare definition of "physician" contained in

8  § 1395x(r)(1)-(5).  Indeed, the precise term at issue is not

9  "physician" but "physicians' services."  42 U.S.C.

10 § 1395x(aa)(1)(A) (defining RHC and FQHC services to include

11 "physicians' services").  That specific term is defined by the

12 applicable Medicaid Act; § 1396d(a)(5)(A) defines "physicians'

13 services" as:  "services furnished by a physician (as defined in

14 section 1395x(r)(1) of this title)."  Thus, the specific

15 provision directly defining "physicians' services" limits the

16 definition to only those physicians described in § 1395x(r)(1);

17 namely, "a doctor of medicine or osteopathy legally authorized to

18 practice medicine and surgery by the State in which he performs

19 such functions or actions."  42 U.S.C. § 1395x(r)(1).

20    Although not raised by defendants, the court is also not

21 compelled by plaintiffs' statutory construction argument

22 considering that numerous subsections of § 1395x(r)(2)-(5)

23 contain certain qualifications which only relate to the *Medicare*

24 statute.  For example, as opposed to § 1395x(r)(1) which contains

25 *no* qualification under Medicare, § 1395x(r)(3) defines a doctor

26 of podiatric medicine "for the purposes of subsections (k), (m),

27 

28 namely, what are the core services for which *provider* RHCs and
   FQHCs are entitled to be reimbursed.

25

(p)(1) and (s) of this section [the Medicare statute] . . . ."
There are similar qualifications for optometrists and
chiropractors.  Sections 1395x(r)(4) and (5) define these doctors
only for purposes of certain *Medicare* provisions; § 1395x(r)(4)
reads: "a doctor of optometry, *but only for purposes of*
subsection (p)(1) and with respect to the provision of items or
services described in subsection (s) of this section which he is
legally authorized to perform as a doctor of optometry by the
State in which he performs them;" § 1395x(r)(5) provides: "a
chiropractor who is licensed as such by the State (or in a State
which does not license chiropractors as such, is legally
authorized to perform the services of a chiropractor in
jurisdiction in which he performs such services), and who meets
uniform minimum standards promulgated by the Secretary, *but only
for the purposes of subsections (s)(1) and (s)(2)(A) of this
section* and only with respect to treatment by means of manual
manipulation of the spine (to correct a subluxation) which he is
legally authorized to perform by the State or jurisdiction in
which treatment is provided."  Contrary to plaintiffs' argument,
these qualifications suggest that the statute was intended to
describe these types of doctors only with respect to Medicare.

        Finally, the court does not find plaintiffs' citation to the
Quevedo-Mendoza email and Smith Letter persuasive.  First, other
than a conclusory citation to <u>Skidmore</u> in one sentence of its
moving papers, plaintiffs fail to demonstrate what level of
deference, if any at all, should be paid by this court to these
types of opinion statements.  Moreover, and more significantly,
plaintiffs wholly fail to describe how these specific opinions

relate to the present issues.  It is not clear that the Menodoza

email supports plaintiffs' position at all, as her remarks could

also be construed as indicating that States may not withdraw

coverage of FRADS services provided by RHC/FQHCs, rather than

general adult dental services.  Similarly, the full context of

the Smith Letter is not clear.  It appears he was addressing only

specific provider types, including clinical psychologists, social

workers and nurse practitioners that provide a particular

classification of services (behavioral services).  Thus, it is

not apparent that his remarks, made nearly seven years ago in

2003, even address the pertinent issue here.

     Accordingly, considering the relevant statutes' clear

direction, the court must find that Medicaid's plain and

unambiguous definition of "physicians' services" controls the

scope of RHC/FQHC services required under federal Medicaid law.

Because that definition renders only the services of doctors of

medicine and osteopathy mandatory services, plaintiffs have not

shown a conflict in federal and state law.  § 14131.10's

exclusion of adult dental, podiatric and chiropractic services is

not in conflict with the mandates of federal Medicaid law, and

thus, plaintiffs' motion for summary judgment on their claim of

federal preemption is denied.

     **2.   Prior Approval of SPAs**

     Plaintiffs argue defendants have violated federal law by

implementing § 14131.10 without first receiving approval of their

proposed SPA.  Such prior approval is required, contend

plaintiffs, by Ninth Circuit precedent.  <u>See</u> <u>Exeter Memorial</u>

<u>Hosp. Ass'n v. Belshe</u>, 145 F.3d 1106 (9th Cir. 1998), relying on

27

1    Washington State Health Facilities Ass'n v. Washington Dep't of
2    Soc. & Health Servs., 698 F.2d 964 (9th Cir. 1982) and Oregon
3    Ass'n of Homes for the Aging, Inc. v. State of Oregon, 5 F.3d
4    1239 (9th Cir. 1993).  In Exeter, a Medicaid provider brought a
5    § 1983 action seeking a preliminary injunction to require DHCS to
6    stop enforcement of its new Medi-Cal reimbursement rates prior to
7    approval of a state plan amendment submitted to HHS.  The court
8    held, reaffirming its prior holdings in Washington State Health
9    and Oregon Ass'n of Homes, that Plan "amendments changing payment
10   methods and standards require [prior federal] approval."  145
11   F.3d at 1108.  The court emphasized that its holding was not
12   based on particular statutory language relating to plan
13   amendments but rather on the "overall statutory framework."  Id.
14   That framework the court held required that "all plans receive
15   approval by the federal government before they may be
16   implemented, and that all amendments to plans must also be
17   federally approved."  Id.  The court held that in Washington
18   State Health, it determined that from these requirements
19   "logically flows the requirement that amendments to plans must be
20   approved before implementation."  Id.

21        Defendants contend: (1) plaintiffs have no enforcable right
22   to challenge a SPA; defendants contend that only the Secretary of
23   HHS can challenge defendants' implementation of § 14131.10
24   without CMS approval (citing 42 U.S.C. § 1396c); (2) Exeter is
25   distinguishable because it considered now repealed provisions of
26   the Medicaid Act (the so-called Boren Amendment), and thus, its
27   holding is inapplicable; and (3) in practice, CMS has
28   consistently allowed DHCS to implement changes to pending SPA

1    approvals to avoid significant delays in implementing
2    reimbursement and/or benefit increases or reductions.

3         Each of defendants' arguments is unavailing.  First, § 1396c
4    does not preclude plaintiffs' pursuit of this action; it merely
5    authorizes the Secretary of HHS to terminate State funding if he
6    finds that a State Plan is not in compliance with federal law.
7    The statute does not preclude a private suit by a provider.
8    Moreover, in <u>Exeter</u>, <u>Washington State Health</u> and <u>Oregon Ass'n of</u>
9    <u>Homes</u>, the Ninth Circuit permitted similar challenges under
10   § 1983:  In <u>Exeter</u>, a Medicaid provider brought a § 1983 action
11   seeking a preliminary injunction to require DHCS to stop
12   enforcement of new Medi-Cal reimbursement rates prior to approval
13   of a SPA by HHS; in <u>Washington State Health</u>, plaintiff
14   association of health facilities sought to enjoin the Secretary
15   of Washington State Department of Social and Health Services from
16   enforcing a state regulation that conflicted with the federally
17   approved State Medicaid Plan until the amendment to the plan was
18   approved by HHS; in <u>Oregon Ass'n of Homes</u>, nursing homes brought
19   an action challenging California's reclassification of nursing
20   services into rate categories receiving lower reimbursement under
21   the State's Medicaid Plan on the ground the State failed to
22   submit a SPA to HHS.  Thus, controlling law in this circuit
23   permits the very type of challenge brought by plaintiffs in this
24   case.  Indeed, in <u>Washington State Health</u>, the court expressly
25   held that while plaintiffs did not plead a cause of action under
26   § 1983, "it is clear that they are properly in federal court
27   under this provision."  698 F.2d at 965 n. 4.

28

29

1     Second, <u>Exeter</u> controls here.  The Ninth Circuit did not tie
2  its holding to any specific statutory language, and thus, the
3  subsequent repeal of the Boren Amendment does not render the
4  decision inapposite to this case.  The Ninth Circuit based its
5  decision on the "overall statutory framework," finding that
6  considered as a whole, that framework required that amendments to
7  plans be approved before implementation.  145 F.3d at 1108.
8  In fact, the arguments defendants raise here were specifically
9  rejected by this court in the underlying decision in <u>Exeter</u> which
10 the Ninth Circuit expressly adopted.  <u>Id.</u> (stating "[w]e adopt
11 [Judge Levi's] opinion in <u>Exeter Memorial Hosp. Ass'n v. Belshe</u>,
12 943 F. Supp. 1239 (E.D. Cal. 1996)" holding "*approval is required*
13 *before implementation of amendments to the Plan*") (emphasis
14 added).  Defendants argue that 42 C.F.R. §§ 430.16 and 447.256
15 support the view that "by its own regulations, the federal
16 Medicaid statute permits implementation of a rate change before a
17 state submits a SPA" or seeks approval of any amendment.  To the
18 contrary, Judge Levi found that § 447.256(c), requiring that a
19 "State Plan amendment that is approved will become effective not
20 earlier than the first day of the calendar quarter in which an
21 approvable amendment is submitted" must be read consistently with
22 the proposition that plan amendments must be approved prior to
23 any implementation--as the regulation provides that a SPA will
24 "become" effective retroactively but only after federal approval.
25 943 F. Supp. at 1244.  Judge Levi also rejected the argument that
26 the regulations establish that CMS' request for more information
27 operates as an "approval."  Instead, he held the regulations make
28 clear that a plan is "approved" only when CMS is satisfied with

1  the State's assurances that the amended plan remains in

2  compliance with the Act.   Id.; 42 C.F.R. §§ 447.253(a); 430.16.

3       Thus, as Judge Levi held, to permit implementation of a SPA

4  without federal approval would enforce a reimbursement plan for

5  an indeterminate period,[13] that has never been approved, that may

6  not be approved, and that may be inadequate under the law.   This

7  would be wholly "inconsistent with the function of the State

8  plan, the approval process for the State plans and amendments,

9  and the [express federal] directive that the States 'must pay'

10  reimbursement according to the methods specified in an approved

11  State plan."   943 F. Supp. at 1243.

12       Finally, defendants' claims that CMS has in practice

13  permitted such prior implementation of a SPA is not relevant to

14  the court's legal inquiry--what may happen in practice does not

15  control what the law requires.   (See Orlich Decl., filed Sept.

16  22, 2010 [Docket #19-3].)[14]

17       Plaintiffs are entitled to a declaration providing that

18  defendants' implementation of § 14131.10 prior to receipt of

19  federal approval of its SPA violates federal law, and as in

20  Exeter, an injunction enjoining implementation of § 14131.10 with

21  _____

22       [13]   Once the agency requests more information the 90 day
   clock stops indefinitely.

23

24       [14]   Vickie Orlich, Division Chief of the Benefits, Waiver
   Analysis and Rates Division of DHCS, declared that "CMS has
   consistently allowed DHCS to implement changes in the scope of

25  benefits or in payment methodologies before issuing approval of a
   SPA.   CMS has always allowed DHCS to claim and receive federal

26  Medicaid funding in accord with scope of benefit or reimbursement
   methodology changes pending their reviewing of a SPA concerning

27  the particular changes.   I am not aware of CMS ever requesting
   DHCS to postpone implementation of a SPA scope of benefit or

28  reimbursement methodology change until CMS has approved the SPA."
   (Id. at ¶ 10.)

respect to the at-issue services until the State's SPA is

approved by CMS.[15]

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary

judgment is GRANTED in part and DENIED in part.  The motion is

DENIED with respect to the issue of federal preemption;

plaintiffs have not shown that § 14131.10 conflicts with federal

law mandates under the Medicaid Act.  However, plaintiffs' motion

is granted with respect to their challenge to defendants'

implementation of § 14131.10 without first receiving CMS approval

of their proposed SPA.  As to that issue, plaintiffs are

entitled:

(1)   to a declaration providing that defendants'

implementation of § 14131.10 prior to receipt of

---

[15]   Defendants did not oppose plaintiffs' motion on the
issue of irreparable harm, and the court finds based on the
proffered evidence set forth above, that plaintiffs have shown
sufficient irreparable harm if an injunction does not issue.
Plaintiffs' monetary injuries are deemed to constitute
irreparable harm because DHCS' status as a branch of the State
government bars plaintiffs from recovering damages in federal
court under Eleventh Amendment sovereign immunity protections.
See California Pharmacists Ass'n v. Maxwell-Jolly, 563 F.3d 847,
851-52 n. 2 (9th Cir. 2009) ("[B]ecause the Hospital Plaintiffs
and their members will be unable to recover damages against the
Department even if they are successful on the merits of their
case, they will suffer irreparable harm if the requested
injunction is not granted.")
Defendants likewise do not oppose the motion on the issue of
the balance of equities.  To the extent the court finds a legal
violation, defendants do not dispute the balance of equities tips
in favor of issuance of an injunction.  Here, there is no
outweighing, countervailing interest; while California has sought
to implement § 14131.10 as a budget measure, under the
circumstances, that interest does not outweigh plaintiffs'
essential role in California's health care safety net, the need
for continued Medicaid reimbursement to sustain the delivery of
services to Medicaid and uninsured beneficiaries, and the
interests of Medicaid beneficiaries in receiving the full scope
of RHC/FQHC services benefits as defined by Congress.

1   federal approval of its SPA violates federal law; and

2   (2)  an injunction enjoining further implementation of

3        § 14131.10 with respect to the subject adult dental,

4        podiatry and chiropractic services until the State's

5        SPA is approved by CMS.

6   The Clerk of the Court is directed to close this file.

7        IT IS SO ORDERED.

8   DATED: October 20, 2010

9

10   _____

11   FRANK C. DAMRELL, JR.
     UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28